[Civ. No. 37400. First Dist., Div. One. Mar. 8, 1976.]

MARY E. SHELTON et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA
COUNTY, Respondent;
THE STATE OF CALIFORNIA et al., Real Parties in Interest.

## COUNSEL

Briski & Frisch and Michael G. Briski for Petitioners.

No appearance for Respondent.

Harry S. Fenton, John P. Horgan, Robert J. DeFea, Thomas J. Brandi and Robert R. Buell for Real Parties in Interest.

## OPINION

**SIMS, J.**—Petitioners, husband and wife, who originally filed their joint complaint in respondent court seeking individually general and special damages proximately resulting from injuries suffered as a result of an automobile accident on March 6, 1973, now seek a peremptory writ of mandate ordering the trial court, which has denied their motion to that end, to permit them to amend their complaint to include, with respect to each, an amendment to claim damages for loss of consortium. (See *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408 [115 Cal.Rptr. 765, 525 P.2d 669].) They claim that each spouse, having made timely claim and having joined with the other in the complaint for personal injuries arising out of the same automobile accident, should be permitted to amend, although the one-year period of limitation from the time of the accident expired before the right to damages of such nature was even recognized in this state, before claim for such damages was filed with the public entities involved, and before it was the subject of any pleading before the court. We issued an alternative writ of mandate to review the question involved because it appeared that there was possibly an abuse of discretion which would prevent the assertion of a meritorious cause of action, and because the remedy by appeal after a trial on the existing pleadings, if successful, might lead to a needless and expensive retrial. (See *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 301, fn. 4 [90 Cal.Rptr. 345, 475 P.2d 441]; *Landis* v. *Superior Court* (1965) 232 Cal.App.2d 548, 554 [42 Cal.Rptr. 893]; *Tate* v. *Superior Court* (1963) 213 Cal.App.2d 238, 251 [28 Cal.Rptr. 548]; *Saari* v. *Superior Court* (1960)

178 Cal.App.2d 175, 177 [2 Cal.Rptr. 856]; and 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 86, p. 3860.) Although service of the alternative writ has been made on all four named defendants in the action below, as real parties in interest, only the State of California has filed a return to the alternative writ.

For reasons set forth below it is determined that there is no merit in the grounds set forth in the petition. The alternative writ must be discharged and the petition will be denied.

The salient facts as revealed by the pleadings and motions in the lower court are as follows: According to the allegations of the complaint petitioner Mary E. Shelton, on March 6, 1973, was riding as a passenger in a vehicle driven by her husband, the petitioner Danny R. Shelton, on State Highway Route 52, at or about its intersection with Walnut Lane, a Santa Clara County highway, when a collision occurred with a vehicle driven by one Yuste, not a party to the action, involving also a third vehicle driven and operated by real party in interest Fontana, and owned by real party in interest Tubbs Cordage Company. Claims were duly presented to the state[1] and county, and were rejected, the former on August 7, 1973, and the latter July 23, 1973.

---

[1]The husband's claim to the state, after reciting the fact of the collision, and the dangerous condition of the highway, continues: "The general description of the injury incurred insofar as now known is as follows: [¶] Fracture of the right arm, damage to front teeth, facial and body lacerations and severe emotional distress. Claimant has not fully recovered from the emotional distress and is still undergoing dental repair. [¶] The amount claimed as of the date of the presentation of this claim is the sum of One Million Dollars ($1,000,000.00) which is based on and computed as follows: [¶] (1) Medical and hospital expenses to date are unknown; [¶] (2) Future medical and general expenses $1,000,000.00

 Total Claim: $1,000,000.00"

The wife's claim is similar and concludes: "The general description of the injury incurred so far as it is now known is as follows: [¶] Acute brain injury resulting in the continued hospitalization. An operation was performed to relieve pressure on the brain; however, claimant has still not yet recovered full control and use of her body functions and continues to have impairment of speech, loss of memory, and general inability to perform independent body functions. [¶] The amount claimed as of the date of the presentation of this claim is the sum of Five Million Dollars ($5,000,000.00) which is based on and computed as follows: [¶] (1) Current expenses and hospital expense as to April 17th $ 12,005.51

[¶] Medical expenses incurring at the rate of $2,000.00 per 15-day period [¶] (3) General and future medical expense $4,987,994.49

 Total Claim: $5,000,000.00"

By their joint complaint, filed January 16, 1974, the wife sought $3 million general damages, and special damages for medical care and treatment and wage loss, according to proof in five causes of action. Two causes of action against each of the respective governmental entities are predicated on the negligence and defects in the construction of the road under the jurisdiction of the respective entity and the failure to give adequate notice of the hazards involved in using the road. The remaining cause of action is predicated upon the negligence of the driver Fontana. In five similar causes of action the husband sought $500,000 general damages, and special damages for medical care and treatment and wage loss, according to proof. There is also a general prayer for such other and further relief as may seem meet and proper to the court.

On August 12, 1974, the Supreme Court filed its opinion in the *Rodriguez* case. Thereafter, the attorney for the petitioners advised the attorney for the state that petitioners would each claim damages for loss of consortium, first by telephone, and on October 24, 1974, by letter. A similar letter was sent to the attorney for the private defendants. On November 14, 1974, the attorney for the state wrote that it did not acquiesce in petitioners' position that such a claim could be included in the prayer for general damages.

On December 9, 1974, petitioners filed their notice of motion to amend complaint.[2] The motion was denied by order signed and filed February 5, 1975. Thereafter petitioners sought to vacate the decision. This motion was denied March 31, 1975, and on July 25, 1975, petitioners commenced the instant proceedings.

---

[2] The proposed "Amendment to Complaint" reads as follows: "Comes [sic] now Plaintiffs, MARY E. SHELTON and DANNY R. SHELTON, and amend their Complaint for Personal Injuries as follows:

"I

"DANNY R. SHELTON, Plaintiff does join in each and every cause of action of his wife's Complaint as the next paragraph in order as follows: [¶] As a direct and proximate cause of the aforesaid acts and conduct of Defendants, and each of them, and of the aforesaid dangerous, hazardous, and unsafe conditions, and as a further proximate cause of the consequences of said injury to his wife as aforesaid, Plaintiff, DANNY R. SHELTON, has been deprived of the services of his wife, MARY E. SHELTON, and his comfort and happiness in her society and companionship have been impaired and Plaintiff has been informed and believes such deprivation of companionship will continue, all to his general damages as hereinafter set forth."

In paragraph II similar but reciprocal allegations are made by the wife in connection "with each and every cause of action in her husband's complaint."

I

In *Rodriguez* v. *Bethlehem Steel Corp., supra,* the court concluded: "We therefore overrule *Deshotel* v. *Atchison, T. & S. F. Ry. Co.* (1958) *supra,* 50 Cal.2d 664, and *West* v. *City of San Diego* (1960) *supra,* 54 Cal.2d 469, 475-478, and declare that in California each spouse has a cause of action for loss of consortium, as defined herein, caused by a negligent or intentional injury to the other spouse by a third party." (12 Cal.3d at p. 408.)

The only reference to the problem posed by petitioners' contentions in these proceedings is found in a footnote in the court's answer to the argument that judicial recognition of one spouse's cause of action for loss of consortium would operate retroactively, and might work a hardship upon persons, who, in reliance upon the existing rule, had made a settlement with the injured spouse, believing that the other spouse could not sue for damages resulting from the former's injury. The court stated, "The solution of the majority of the other courts, which we adopt, is simply to declare that for reasons of fairness and sound administration a spouse will not be permitted to initiate an action for loss of consortium—even though not barred by the statute of limitations—when the action of the other spouse for the negligent or intentional injury giving rise to such loss was concluded by settlement or judgment prior to the effective date of this decision. [Citations.]" (*Id.,* fn. omitted. See also *Hair* v. *County of Monterey* (1975) 45 Cal.App.3d 538, 546-548 [119 Cal.Rptr. 639]. Cf. *Suter* v. *Leonard* (1975) 45 Cal.App.3d 744, 746-748 [120 Cal.Rptr. 110].) The omitted footnote reads, "It is probable that few if any such claims exist in any event, as serious injury cases are rarely settled or brought to judgment within one year after the occurrence of the injury, the governing period of limitations (Code Civ. Proc., § 340, subd. 3). With the exception of such cases, all claims for loss of consortium not barred by the statute of limitations may now be asserted: for the reasons persuasively stated in *Fitzgerald* v. *Meissner & Hicks, Inc.* (1968) *supra,* 157 N.W.2d 595, 598-599, our decision herein is to be given normal retroactive effect within the limits of the statute of limitations." (12 Cal.3d at p. 408, fn. 30. See also *Hair* v. *County of Monterey, supra,* 45 Cal.App.3d 538, 547.)

In *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370], the trial court permitted an amendment to the wife's cause of action, to recover her damages for personal injuries, that permitted the husband, more than one year after the accident giving rise to the injuries,

to assert, in a second count, a cause of action for loss of consortium. The defendant's demurrer, on the ground that cause of action was barred by the statute of limitations, was overruled. The Court of Appeal, upon the petition of the defendant, issued a peremptory writ ordering the trial court to sustain the demurrer without leave to amend. The court rejected the husband's contention that the statute of limitations on his claim could only commence to run when the decision was filed in *Rodriguez.*

A reading of the footnote quoted above indicates, as noted by the *Bartalo* court, that the Supreme Court contemplated that only those persons whose cause of action for loss of consortium arose within one year prior to the filing of the opinion would be able to file suit, and then only if the injured spouse had not effected a settlement or secured a judgment (51 Cal.App.3d at pp. 529-530). The court also pointed out that California decisional law precludes the right to bring an action despite a change in law after the statute of limitations has expired on the original claim, even though it might have been deemed futile to pursue the claim under previously prevailing rules of law. (51 Cal.App.3d at pp. 530-532. See *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 406-408 and 413-414 [99 Cal.Rptr. 129, 491 P.2d 1105]; *Estate of Horman* (1971) 5 Cal.3d 62, 71 [95 Cal.Rptr. 433, 485 P.2d 785]; and *Lopa* v. *Superior Court* (1975) 46 Cal.App.3d 382, 390-392 [120 Cal.Rptr. 445].)

In *Bartalo* the court also rejected the husband's argument that his wife's complaint could be amended to add him as a party plaintiff and that the statute of limitations was tolled by the filing of the wife's original complaint, because his cause of action in the amended complaint, since it sought recovery on the same general set of facts, would relate back to the date of the filing of the wife's complaint. (See *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681], and discussion part II below.) The decision recognizes the liberal rule of amendment and relation back promulgated in *Austin.* (*Id.,* pp. 532-533. See 56 Cal.2d at pp. 600-601.) It concluded, however, "Husband's claim to a loss of consortium is a wholly different legal liability or obligation. The elements of loss of society, affection and sexual companionship are personal to him and quite apart from a similar claim of the wife. True, in a sense it is derivative because it does not arise unless his wife has sustained a personal injury, however, his claim is not for her personal injuries but for the separate and independent loss he sustained. [Citation.]" (*Id.,* p. 533.) The same concept was recognized by the trial court here in its "Memorandum and Notice of Intended Decision," when it tersely stated, "The 'general set of facts' relied upon is the happening of an accident by reason of the alleged negligence of

defendants proximately causing injury and resulting damages to the *particular* plaintiff. Plaintiffs now seek to amend to allege their entitlement to damages for the negligent injury to *another person,* i.e., the other plaintiff. This is not an additional injury arising from the facts previously pleaded and does therefore not arise from the same 'general set of facts.' " (Italics the trial court's.)

Finally the *Bartalo* court distinguished cases where after the limitation period has run, an additional party plaintiff seeks to enforce an independent right from those in which under similar circumstances an additional or substituted plaintiff seeks to enforce the same right as was timely asserted. (*Id.,* pp. 533-534.) With respect to the former situation, it stated, "Husband should have been a litigant in the original complaint." (*Id.,* p. 534.) The relevancy of that factor in this case is discussed below (see part II).

■ Here the original claims filed by each spouse were silent with respect to any injury or damages suffered by reason of injury to the other. (See fn. 1, and part III below.) The motion to amend sought to link the newly asserted claim for damages for loss of consortium, not with that of the spouse asserting the claim, but with the causes of action already asserted by the other spouse for the physical injuries he or she suffered. We believe that *Bartalo* v. *Superior Court* was correctly decided and governs this case insofar as each spouse asserts that he or she is entitled to amend the causes of action asserted by the other.

## II

■ Petitioners point out that in this action, unlike *Bartalo,* each spouse is party to a joint action in which that plaintiff has sought damages for personal injuries. It is suggested, contrary to the wording of the proposed amendment (see fn. 2 above), that the husband's proposed amendment should be considered as part of his causes of action and be embraced within his prayer for general relief, rather than being a joinder in the causes of action asserted by the wife for her injuries, and that the wife's proposed amendment should be treated similarly. In the trial court this contention was predicated on isolating a sentence in *Rodriguez* reading, "[The wife's] prayer for general damages is good and may be supported by proof, if any she has, of loss or impairment of her right to consortium." (12 Cal.3d at p. 409, fn. omitted.)

Examination of the content in which this sentence is found, and of the remainder of the opinion, reveals no support for petitioners' theory. The decision stated that in a jointly filed amended complaint the husband sought recovery of general damages, medical expenses and loss of earnings in a first cause of action, and in the second cause of action the wife "alleged the consequences to her of Richard's injuries, and prayed for general damages in her own right, the reasonable value of the nursing care she furnishes her husband, and compensation for the loss of her earnings and earning capacity." (*Id.,* p. 387.) The quoted sentence was lifted from a discussion of the items of damages prayed for in the second count. The court concluded that the deprivation of the husband's physical assistance in operating and maintaining the family home is a compensable item of loss of consortium (*id.,* p. 409, fn. 31); but it ruled that the wife could not recover in her cause of action for the nursing services which she furnished her husband, or for the loss of earnings while performing such services, because the cost of such services was a proper element of the husband's damages (*id.,* p. 409). The court's emphasis on distinguishing each element of damages so that there was no double recovery by an award to the injured person for his injuries, and to his spouse for lack of consortium (*id.,* p. 406), serves to further highlight the distinction between the original causes of action and the causes of action which the petitioners now seek to add. The elements of the new cause of action were not the subject of petitioners' original claims (see part III below), nor were they an element of the original prayers for general damages.

Petitioners' further contention that the reasoning in *Bartalo* is faulty and clearly is not applicable to this case where both spouses filed a timely claim for personal injuries and joined in a timely joint complaint to recover such damages requires further analysis.

In *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, the court acknowledged "the action against the fictitiously named defendant who subsequently was replaced by Massachusetts Bonding was one for refusal to deliver property as a principal, whereas in the amended complaint Massachusetts Bonding was sued as surety on the bond." (56 Cal.2d 600.) The amended complaints were filed after the expiration of the period fixed in the bond for instituting an action against the surety (*id.,* p. 599). By a neat bit of legerdemain involving the application of the algebraic principle that two negatives make a positive, Chief Justice Gibson and a unanimous court found that the amended complaint, filed and served after the limitation period had run, was not

barred. (*Id.,* p. 603.) The opinion properly indicates that if the bonding company had been sued by its true name in the original complaint, the facts alleged therein, which included an allegation that the principal defendants had filed a surety bond for the faithful performance of the corporate defendants' duties as a licensed broker (*id.,* p. 598), were broad enough to permit the amendment to relate back to the original complaint for the purposes of the statute of limitations (*id.,* p. 602). It then, without explaining why the name of the surety, who filed a statutory bond, was not discovered within the two-year limitation period after the action was filed,[3] applies the general rule that a defendant sued by a fictitious name and later brought into the case by an amendment substituting his true name is considered a party to the action from the commencement for purposes of the statute of limitations (*id*). That leap blithely overlooks that the original complaint failed to state a cause of action or facts implicating any fictitious defendant as a surety, and no attempt was made to do so until after the limitation period had expired. The logic of the decision is contained in the last paragraph where the court states: "The policy in favor of litigating cases on their merits is equally applicable whether a defendant is sued by a fictitious name or by his true name, and that policy is of particular importance in the present case, where the bond forming the basis of the alleged liability of Massachusetts Bonding is required by statute for the protection of the public." (56 Cal.2d at p. 603.)

With the foregoing reservations in mind, we can examine the rule found in *Austin,* its antecedents and progeny, and their application to the facts of this case. The salutary principle expostulated by the chief justice in establishing the first predicate of the decision reads as follows: "The modern rule with respect to actions involving parties designated by their true names in the original complaint is that, where an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts. [Citations.] This rule is the result of a development which, in furtherance of the policy that cases should be decided on their merits, gradually broadened the right of a party to amend a pleading without incurring the bar of the statute of limitations." (*Id.,* p. 600. See also 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 1079-1082, pp. 2655-2662.) By this test we must ascertain whether the proposed amendment to the

---

[3]See *Jensen* v. *Royal Pools* (1975) 48 Cal.App.3d 717, 722, fn. 4 [121 Cal.Rptr. 805], and cases cited.

complaint echoes the same general set of facts as was alleged in the original complaint. There is some semblance of logic in urging that if the parenthetical clause in *Austin* concerning the existence of a surety bond can germinate a subsequent cause of action against the surety, the wife's parenthetical reference to driving with her husband can blossom into her right to recover damages for the injuries which he impliedly suffered. Similarly it is urged that the existence of a joint complaint gives the defendant adequate notice of the facts of the injury to the other spouse on which the new cause of action asserted by each spouse is predicated. These considerations do not govern. In our opinion the failure of each spouse to assert within the statutory period that a claim was asserted for damages to that spouse by virtue of the injuries to the other, bars the assertion of such a claim by amendment. When analyzed *Austin* only permits one recovery, though against both principal and surety, by reason of the tortious or otherwise wrongful conduct of the principal defendants set out in the original complaint. In this case each petitioner seeks to add to the recovery for personal injuries cognizable at the time suit was filed, a second recovery for injuries to the spouse.

The cases relied upon in *Austin* do not furnish precedent for the untimely assertion of petitioner's claims in *Rodriguez*. *Eichler Homes of San Mateo, Inc.* v. *Superior Court* (1961) 55 Cal.2d 845 [13 Cal.Rptr. 194, 361 P.2d 914], merely exposits what is assumed in these proceedings: "Whether the new allegations are incorporated in a newly filed separate count or as a newly added part of a previously filed count, can have no effect on the question as to whether the claim is barred by a statute of limitations." (55 Cal.2d at p. 848.) No ruling was made as to whether the pleader could correct a description after the statutory period had run. In *Brooks* v. *E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669 [255 P.2d 802], the court held that the trial court had erroneously sustained a demurrer to three counts setting forth specific acts and omissions, which were part of the operation and control of the vehicle for which the defendants were responsible, on the ground that the counts were barred by the statute of limitations, because the facts alleged were not unrelated to those set forth in the original complaint (40 Cal.2d at pp. 680-681). Here, although the facts giving rise to the tortfeasors' liability for loss of consortium may be related to those in the original complaint, the facts measuring that liability are novel and were not asserted until after the statute had run. In *Wennerholm* v. *Stanford Univ. Sch. of Med.* (1942) 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358], the court reversed a judgment predicated on the theory that the assertion of an amended added count for fraud was barred by the statute of limitations. The court

ruled, "In the present case the only substantial difference between the factual situations set forth in the original and the fifth amended complaint is that the former charged that the representations were negligently made while the latter charges that they were made with knowledge of their falsity. Despite the change in legal theory from an action for negligence to one for fraud, it cannot be said that an entirely different cause of action is stated. Therefore the latter complaint is not barred by the statute of limitations." (20 Cal.2d at p. 718.) It is clear both from *Rodriguez* itself and our foregoing analysis of the situation involved in this case that here the petitioners each seek to state "an entirely different cause of action" and not a mere "change in legal theory" for the same cause of action found in the original complaint. (Cf. *Wells* v. *Lloyd IV* (1936) 6 Cal.2d 70, 88 [56 P.2d 517]; and *Frost* v. *Witter* (1901) 132 Cal. 421, 427 [64 P. 705].) In the former case there was a mere amplification of the transaction set forth in the original complaint. In the latter case the noteholder was permitted to amend to show the true fact, that the note was secured by mortgage. Significantly the amendment was not upheld against the transferee of the mortgaged property who was made a party after the statutory period within which to enforce the note and mortgage had expired (132 Cal. at pp. 423 and 427).

Cases following *Austin* lend some support to petitioners' contention. In *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825], the court held that it was error to strike, because barred by the one-year statute of limitations, the plaintiff's amended second cause of action against the employer city, for wrongful death of a civilian shot by plainclothes policemen on the theory that the city was liable for its own negligence in retaining officers known to be dangerous, because that cause of action sought recovery on the same general set of facts as the original complaint which sought recovery on a *respondeat superior* theory alleging the policeman had intentionally and wrongfully shot her husband to death. (2 Cal.3d at pp. 583-585. See also *Wilson* v. *Bittick* (1965) 63 Cal.2d 30, 36-39 [45 Cal.Rptr. 31, 403 P.2d 159] [amendment to enlarge the description of property involved]; *Lopa* v. *Superior Court, supra,* 46 Cal.App.3d 382, 386-387 [amendment to bring in driver of car after guest law held unconstitutional]; *General Credit Corp.* v. *Pichel* (1975) 44 Cal.App.3d 844, 848-851 [118 Cal.Rptr. 913] [amendment to recover on acknowledgment of debt rather than obligation pleaded]; *Barnes* v. *Wilson* (1974) 40 Cal.App.3d 199, 202-206 [114 Cal.Rptr. 893] [amendment to show negligence of a second tavern owner, when original complaint against first]; *Breceda* v. *Gamsby* (1968) 267 Cal.App.2d 167, 170-175 [72 Cal.Rptr. 832] [amendment of general allegations of negli-

gence against fictitious defendants to show wilful and reckless disregard for plaintiff's safety by supervising employee]; *Garrett* v. *Crown Coach Corp.* (1968) 259 Cal.App.2d 647, 649-653 [66 Cal.Rptr. 590] [amendment of general allegations of negligence to show negligent design and manufacture by the manufacturers]; *Landis* v. *Superior Court, supra,* 232 Cal.App.2d 548, 555-556 [amendment seeking reformation of instrument the subject of the complaint]; and *Saari* v. *Superior Court, supra,* 178 Cal.App.2d 175, 178 [amendment to show wilful and wanton misconduct].)[4]

*Barnes* v. *Wilson, supra,* is a typical example of the foregoing cases, and is most pertinent to the issue here because it involved a change in law. The action was for wrongful death of a patron of the Golden Gloves Tavern who was stabbed at those premises. It was originally alleged that the owners of the Golden Gloves and Doe I, their employee, negligently failed to warn patrons of the unreasonable risk created by the presence of the assailant and negligently failed to provide protection for their patrons. The first amended complaint also contained general allegations of negligence against fictitious defendants in connection with "the events and happenings herein referred to." The original complaint had been filed October 29, 1970, some eight months before the decision in *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], which changed the law of this state with respect to the liability of vendor of alcoholic beverages for injuries caused by one to whom he had furnished intoxicating beverages. Almost a year after the one-year statute had run the plaintiff caused the owners of the Copper Door Tavern to be served as fictitious defendants and subsequently amended her complaint to charge that they negligently furnished alcoholic beverages to the assailant. At first blush that case appears to parallel the situation here. The analogy fails when one analyzes "the same general facts" in the original complaint in the light of the primary right which each of the petitioners claimed was violated, the primary duty devolving upon the defendants, and the delict or wrong done by the defendants, which consisted in a breach of such primary right and duty. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 22-25, pp. 1707-1711.) In the cases under review the primary right claimed by the plaintiffs was never

---

[4]Cases in which the rule promulgated in *Austin* has been applied to permit amendment to substitute a proper party plaintiff to a well pleaded cause of action are not deemed relevant to the issue framed here. (See *Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 21 [108 P.2d 906, 135 A.L.R. 318]; and *Jensen* v. *Royal Pools* (1975) 48 Cal.App.3d 717, 720-723 [121 Cal.Rptr. 805]; and note *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526, 534, fn. 3 [124 Cal.Rptr. 370].)

changed, nor was there a change in the duty of those allegedly responsible. As stated in *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636 [134 P.2d 242], "The cause of action is simply the obligation sought to be enforced. [Citations.] The negligence of defendant alleged in the prior action and that alleged against it in this action represent but different invasions of plaintiff's primary right and different breaches of the same duty that it owed to him. There was one injury and one cause of action. A single tort can be the foundation for but one claim for damages. [Citations.]" (21 Cal.2d at p. 638. See also *Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891, 895 [151 P.2d 840]; *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593];[5] and *Ford Motor Co.* v. *Superior Court* (1973) 35 Cal.App.3d 676, 679.) In *Wulfjen* v. *Dolton, supra,* the court stated, "The violation of *one primary right* constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other. [Citation.]" (24 Cal.2d at pp. 895-896.) Here, although the facts giving rise to the duty owed by the defendants to petitioners were the same under the original complaint and the proposed amendment, each petitioner has two separate independent rights, one to be free of injury caused by the tortious act of another, and secondly to be free of the loss of consortium resulting from injury to a spouse caused by the tortious act of another. In this case it is purely fortuitous that as to each of petitioners both primary rights were violated by the same tortious act. Nevertheless they are severable and independent and the assertion of one within the statutory period does not excuse the failure to assert the other.

The situation is analogous to that in which it was recognized that the wife has a separate cause of action for her own injuries which is independent of an action to recover for the community damages to the community property, or an action for consequential damages for moneys expended and indebtedness incurred by the community because of such injuries. (See *Sanderson* v. *Niemann* (1941) 17 Cal.2d 563, 568-571 [110 P.2d 1025]; *Redwing* v. *Moncravie* (1933) 131 Cal.App. 569, 572 [21 P.2d 986]; and *Edgar* v. *Citraro* (1931) 112 Cal.App. 183, 185-186 [297 P. 653].

---

[5]The cases under the guest law are not controlling because it is generally recognized that there is one wrong and one right to recovery and that the guest law merely affected the standard of proof. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795-796 [126 Cal.Rptr. 225, 543 P.2d 593]; *Lopa* v. *Superior Court* (1975) 46 Cal.App.3d 382, 386-387 [120 Cal. Rptr. 445]; *Cummings* v. *Morez* (1974) 42 Cal.App.3d 66, 74 [116 Cal.Rptr. 586]; *Saari* v. *Superior Court* (1960) 178 Cal.App.2d 175, 179 [2 Cal.Rptr. 856]; and *Barr* v. *Carroll* (1954) 128 Cal.App.2d 23, 27-34 [274 P.2d 717].)

Cf. *Kesler* v. *Pabst* (1954) 43 Cal.2d 254, 256-257 [373 P.2d 257]; and *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 320-321 [202 P.2d 73, 6 A.L.R.2d 461]; but note *Self* v. *Self* (1962) 58 Cal.2d 683, 690-691 [26 Cal.Rptr. 97, 376 P.2d 65]; Civ. Code, §§ 5109, 5110, 5125 and 5126; and 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, §§ 13-18, pp. 5104-5111.) It is generally recognized that causes of action for injuries to person and property are separate. (See *Holmes* v. *David H. Bricker, Inc.* (1969) 70 Cal.2d 786, 789 [76 Cal.Rptr. 431, 452 P.2d 647].) The spouses damage for loss of consortium is not an injury to his person. Similarly it has been recognized that the right granted the heirs and personal representatives to recover damages for wrongful death, to which damages for loss of consortium have been compared (see *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 387), is an original and distinct cause of action, not derived from or a continuation or revival of a cause of action existing in the decedent before his death. (*Garcia* v. *State of California* (1967) 247 Cal.App.2d 814, 816 [56 Cal.Rptr. 80]. See *Lewis* v. *City and County of San Francisco* (1971) 21 Cal.App.3d 339, 341 [98 Cal.Rptr. 407]; and *Petersen* v. *City of Vallejo* (1968) 259 Cal.App.2d 757, 766-767 [66 Cal.Rptr. 776].) So here neither spouse can claim a derivative right from the complaint filed by the other for the damages and injuries suffered by the latter.

It is concluded that the principles enunciated in *Austin* do not furnish grounds for permitting the untimely cause of action[6] asserted in this case.

### III

The foregoing discussion has been directed to the one-year limitation set forth in subdivision 3 of section 340 of the Code of Civil Procedure, which the court in *Rodriguez* indicated was applicable. (See 12 Cal.3d at p. 408, fn. 30.) The state further points out that neither spouse has ever filed a claim for the injury and resulting damages sought by their amendments. (See Gov. Code, §§ 910, 911.2, 911.4 and 946.6.) Since more than one year has expired since the accrual of the cause of action (§ 911.4, subd. (b)), the time within which to file a late claim

---

[6]"In California the phrase 'causes of action' is often used indiscriminately to mean what it says and to mean *counts* which state differently the same cause of action, . . ." (*Eichler Homes of San Mateo, Inc.* v. *Superior Court* (1961) 55 Cal.2d 845, 847 [13 Cal.Rptr. 194, 361 P.2d 914]; *Slater* v. *Blackwood, supra,* 15 Cal.3d 791, 796.) We use the phrase here in the sense that it is comprised of the plaintiff's primary right and defendant's corresponding duty, combined with the defendant's breach of such right and duty.

expired before the claim for damages for loss of consortium could be asserted. ▇ "In actions for damages against local public entities, the claims statutes require timely filing of a proper claim as condition precedent to the maintenance of the action. [Citations.] Compliance with the claims statutes is mandatory [citation]; and failure to file a claim is fatal to the cause of action. [Citation.]" (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701]. See also *Dias* v. *Eden Township Hospital Dist.* (1962) 57 Cal.2d 502, 503-504 [20 Cal.Rptr. 630, 370 P.2d 334]; *Roberts* v. *State of California* (1974) 39 Cal.App.3d 844, 847-848 [114 Cal.Rptr. 518]; *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 696-697 [108 Cal.Rptr. 392]; *Lewis* v. *City and County of San Francisco, supra,* 21 Cal.App.3d 339, 341; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 753 [84 Cal.Rptr. 257]; *Fonseca* v. *County of Santa Clara* (1968) 263 Cal.App.2d 257, 259-260 [69 Cal.Rptr. 357]; and *Petersen* v. *City of Vallejo, supra,* 259 Cal.App.2d 757, 765.)

Petitioners suggest that the claims filed (see fn. 1 above) generally put the public entity on notice and satisfied the claims statute. This contention is answered in *City of San Jose* v. *Superior Court, supra,* where the court said, "It is not the purpose of the claims statutes to prevent surprise. ▇ Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel. [Citations.]" (12 Cal.3d at p. 455.) It is obvious that the state had no notice that any claim for loss of consortium was involved until its attorney received a telephone call more than one year after the accident.

Nor can the new cause of action "piggyback" on the old claim. As we have seen the claim of each spouse is defective in failing to allege any injury to the claimant by reason of the injuries to the other spouse. The latter's claim, setting forth that claimant's personal injuries will not support the claim of another. (See *Roberts* v. *State of California* (1974) 39 Cal.App.3d 844, 848 [114 Cal.Rptr. 518]; *Bozaich* v. *State of California, supra,* 32 Cal.App.3d 688, 697; *Lewis* v. *City and County of San Francisco, supra,* 21 Cal.App.3d 339, 341; and *Petersen* v. *City of Vallejo, supra,* 259 Cal.App.2d 757, 766-767.) Moreover, when there is an attempt to assert not merely a new theory, but liability on an entirely different

state of facts, the failure to state a claim on the latter facts will defeat amendment of the complaint. (See *Connelly* v. *State of California, supra,* 3 Cal.App.3d 744, 753; and note *Youngblood* v. *City of Los Angeles* (1958) 160 Cal.App.2d 481, 490-492, cf. 489-490 [325 P.2d 587].)

The alternative writ is discharged and the petition is denied.

Molinari, P. J., and Elkington, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied May 6, 1976.