[Civ. No. 38919. First Dist., Div. One. Aug. 3, 1977.]

MARY LEA PRIOLA, a Minor, et al., Plaintiffs and Appellants, v. JOHN JAMES PAULINO et al., Defendants and Respondents.

**COUNSEL**

Warwick, Stahl, Warwick & Gardner, William Stahl and Michael W. Perna for Plaintiffs and Appellants.

Connolly, Hothem & Flint, Ronald E. Hothem and Michael F. Boyle for Defendants and Respondents.

**OPINION**

**SIMS, J.**—Plaintiffs, who are respectively the three minor children and the husband of Geraldine Priola, who was injured on March 28, 1973, in an automobile accident allegedly caused by the negligence of the defendants, have appealed from an order dismissing their complaint in which each sought damages for loss of consortium. The defendants demurred to the complaint and moved to strike it on the ground that the husband's action for loss of consortium was barred by the statute of limitations because it was not filed until May 12, 1975, more than one year after the wife was injured, and on the ground that the law fails to provide any right of action to children for injuries sustained by a parent. The trial court upheld the demurrer to the childrens' three causes of action without leave to amend, and the demurrer to the husband's cause of action with leave to amend. Plaintiff husband having failed to amend, the court granted defendants' motion to dismiss and a judgment of dismissal was entered. This appeal ensued, and submission was deferred pending decision in *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858] (rehg. den. June 2, 1977).

I

The first three causes of action are disposed of by *Borer* v. *American Airlines, Inc., supra,* where the court determined, "We conclude, however, that taking into account all considerations which bear on this question, including the inadequacy of monetary compensation to alleviate that tragedy, the difficulty of measuring damages, and the danger of imposing extended and disproportionate liability, we

should not recognize a nonstatutory cause of action for the loss of parental consortium." (19 Cal.3d at p. 453.)

## II

■ With respect to the husband's cause of action it has generally been recognized that the action for loss of consortium first recognized August 21, 1974, in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669], is subject to the statute of limitations (12 Cal.3d at p. 408, fn. 30). It has been held that an action must be filed within one year from the date of injury which gives rise to the loss of consortium. The fact that such a cause of action did not exist at the time of the injury does not toll the statutory period. (*Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66, 72-81 [128 Cal.Rptr. 454] (hg. den. May 6, 1976); and *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526, 528-534 [124 Cal.Rptr. 370].) The claimant cannot avoid the defenses of the limitation period by assertion of a claim for loss of consortium as an amendment to the timely claim of the injured spouse (*Shelton* v. *Superior Court, supra*; *Bartolo* v. *Superior Court, supra*); nor can the claim be aided by the fact the claiming spouse has filed a timely action for injuries to his own person (*Shelton* v. *Superior Court, supra*).

Plaintiff husband seeks to avoid the effect of the above decisions on the theory that although his wife sustained her original injuries on March 28, 1973, it was only on September 11, 1974, when she was permanently disabled by Parkinson's syndrome, that she became incapable of taking care of herself, and he suffered his loss. Although there were allegations to that effect in the childrens' causes of action, the allegations were not included in the husband's. He failed to amend, although given an opportunity so to do. It is therefore questionable whether he can raise the point on the record before this court. ■ "The rule is settled in this state that, where the complaint sets up more than one cause of action, each count must be complete in itself, and must contain all the facts necessary to constitute a cause of action; and its defects cannot be supplied from other statements, unless such statements are expressly referred to and adopted as a part of it. [Citations.]" (*Hopkins* v. *Contra Costa County* (1895) 106 Cal. 566, 570 [39 P. 933]; and *Cameron* v. *Ah*

*Quong* (1908) 8 Cal.App. 310, 316 [96 P. 1025]. See 3 Witkin Cal. Procedure (2d ed. 1971) Pleading, § 323, pp. 1991-1992.)

Plaintiff husband relies upon the following general rule, "Since the enactment of section 452 of the Code of Civil Procedure in 1872, it has been generally recognized that in the construction of a pleading for the purpose of determining its effect, 'its allegations must be liberally construed, with a view to substantial justice between the parties.' [Citations.]" (*Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 542 [145 P.2d 305]. See also *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 [172 P.2d 867]; *Wennerholm* v. *Stanford Univ. Sch. of Med.* (1942) 20 Cal.2d 713, 718-719 [128 P.2d 522, 141 A.L.R. 1358]; and *Hill* v. *City of Santa Barbara* (1961) 196 Cal.App.2d 580, 585 [16 Cal.Rptr. 686].) ■ On the other hand, it is recognized that where, as here, the plaintiff is given leave to amend and fails to do so all ambiguities and uncertainties will be construed against the pleader. "The purpose of a demurrer is to point out a defect in the complaint, and the normal effect of sustaining it is merely to require the plaintiff to amend and eliminate the defect. Hence decisions which refer to the 'familiar rule' that 'the pleader has stated his case as favorably as possible,' and that 'all ambiguities therein must be resolved against the pleader' will usually be found to involve the following: (1) a defective complaint; (2) the defect pointed out by demurrer; (3) demurrer sustained with leave to amend; (4) plaintiff unwilling or unable to remove the defect. These cases establish the rule that, on an appeal by the plaintiff, the complaint will be construed against him." (3 Witkin, *op.cit.,* § 337, p. 2005. See *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572, fn. 4 [108 Cal.Rptr. 480, 510 P.2d 1032]; *McIntyre* v. *Hauser* (1900) 131 Cal. 11, 12 [63 P. 69]; *Oakes* v. *E.I. Du Pont de Nemours & Co., Inc.* (1969) 272 Cal.App.2d 645, 651-652 [77 Cal.Rptr. 709]; and *Lucas* v. *Roberts* (1962) 201 Cal.App.2d 365, 366 [20 Cal.Rptr. 23].)

III

We are reluctant to dispose of the matter on the foregoing principles because it appears that the husband presented his case to the court below on the mistaken theory that he had incorporated the allegations concerning the onset of his wife's permanent incapacitating disability in his own cause of action. The allegations included in his cause of action

by reference are set forth in the margin,[1] as are the allegations omitted,[2] and further allegations added.[3] His claim that his action is not barred rests on the following principles.

In the first place, "Husband's claim to a loss of consortium is a wholly different legal liability or obligation [from his wife's cause of action for her injuries]. The elements of loss of society, affection and sexual companionship are personal to him and quite apart from a similar claim of the wife. True, in a sense it is derivative because it does not arise unless his wife has sustained a personal injury, however, his claim is not for her personal injuries but for the separate and independent loss he sustained." (*Bartalo* v. *Superior Court, supra,* 51 Cal.App.3d 526, 533. See also *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, 405-406; *Shelton* v. *Superior Court, supra,* 56 Cal.App.3d 66, 80; and Rest., Torts (1938) § 693, com. d, pp. 493-494.)

Secondly, he relies upon the general principle that there can be no accrual of a cause of action as contemplated by section 312 of the Code

---

[1] The first three causes of action included the following allegations which were incorporated in the husband's cause of action:

"XI

"As a proximate result of said negligence of Defendants, and each of them, Geraldine Priola was hurt and injured in her health, strength and activity, sustaining injuries to her body, and shock and injury to her nervous system and person, all of which said injuries have caused and continue to cause the Plaintiff great mental, physical and nervous pain and suffering, more particularly, as a direct and proximate result of the negligence of Defendants, and each of the [*sic*], Geraldine Priola, the natural mother of Plaintiff suffered permanent disability in the form of the onset of Parkinson's syndrome and to date Geraldine Priola has suffered from loss of memory, shaking in her left leg with a resulting loss of ability to walk,.shaking in her left hand with the resulting loss of use of said left hand, and other injuries."

[2] They also included the following allegations which were not incorporated in the husband's cause of action:

"XII

"As a result of the above stated injuries, Geraldine Priola, on or about September 11, 1974 became incapable of taking care of herself and is in need of constant care and attention from the Plaintiff, and will need such constant care and attention for the rest of her life and the said Plaintiff will be required to and will give the said natural mother said constant care and attention above and beyond what would be normally expected of a child except for the said injuries received by Geraldine Priola."

[3] After incorporation by reference of paragraphs, including paragraph "XI" above from the first cause of action, the husband's complaint continues:

"II

"That at all times mentioned herein, the Plaintiff Mitchell Joseph Priola was the husband of Geraldine Priola.

"III

"As a result of the above stated injuries Geraldine Priola is incapable of taking care of herself and is in the need of the constant care and attention from the Plaintiff, and will need such constant care and attention for the rest of her life and the said Plaintiff will be

of Civil Procedure[4] until the spouse actually suffers a loss of consortium. He relies upon *Milde* v. *Leigh* (1947) 75 N.D. 418 [28 N.W.2d 530, 173 A.L.R. 738]. There the action was for malpractice of a physician, who negligently performed a sterilization operation on the wife following a cesarean delivery, to recover the husband's damages for outlays for the care of the wife at a second pregnancy, and for loss of her services and companionship. The doctor claimed that although the action was commenced eight months after the delivery of the second child, it was barred by a statute which required actions for damages for malpractice to be commenced within two years after the cause of action accrued, because it was not commenced until more than thirty-three months after he had completed his services in connection with the first delivery. After recognizing, as we have above, the separate character of the husband's cause of action for his expense and loss of consortium (75 N.D. at pp. 423-429 [28 N.W.2d at pp. 534-537; 173 A.L.R. at pp. 745-748]), the court addressed itself to the question of when that cause of action accrued. It answered the issue as follows: "Some authorities hold that such cause of action accrues, and that the statute of limitations begins to run, on the date the wrongful act or negligence occurred. Other authorities hold that the cause of action does not accrue until the loss of services actually occurs, and the expenditure for medical treatment and care are required.

---

required to and will give Geraldine Priola, his wife, said constant care and attention above and beyond what would normally be expected of a husband except for the said injuries received by Geraldine Priola, his wife.

"IV

"That by reason of having to devote an inordinate amount of time, care and attention to said wife, Plaintiff, as a result thereof, has considerably less time to devote to the rest of his children, thus occasioning a breakdown of the normal family structure; all of which was reasonably foreseeable by the Defendants and each of them.

"V

"That as a result of the aforementioned injuries to Geraldine Priola, Plaintiff's wife, Plaintiff has been denied the comfort, society, companionship, pleasure and sexual activity incidental to being married to a physically and mentally normal woman, all of which was foreseeable by the Defendants, and each of them."

[4]Code of Civil Procedure section 312 provides: "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute."

Section 335 reads: "The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:"

Section 340 provides in pertinent part: "Within one year: . . . [¶] 3. An action . . . for injury to . . . one caused by the wrongful act or neglect of another, . . ." (See *Rodriguez* v. *Bethlehem Steel Corp.*, *supra*, 12 Cal.3d 382, 408, fn. 30, indicating the foregoing as "the governing period of limitations"; *Basler* v. *Sacramento etc. Ry. Co.* (1913) 166 Cal. 33, 36-37 [134 P. 993]; and *Gottesman* v. *Simon* (1959) 169 Cal.App.2d 494, 503 [337 P.2d 906].)

In our opinion the latter is the just and correct rule." (*Id.,* at p. 429 [28 N.W.2d at p. 537, 173 A.L.R. at p. 748]. See also *Brown* v. *Finger* (1962) 240 S.C. 102, 111 [124 S.E.2d 781, 785-786].)

The decision rests on the general principle that in order to have an actionable tort there must be a wrongful invasion by the defendant of some legal right of the plaintiff and damage resulting to the plaintiff from the wrongdoing. (See *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 512-513 [121 Cal.Rptr. 705, 535 P.2d 1161]; and 2 Witkin, Cal. Procedure (2d ed. 1971) Actions, § 263, pp. 1116-1117.) It is apparent that in *Milde* v. *Leigh, supra,* the invasion of the husband's right to have his wife continue in good health so he could enjoy her services and companionship in the future occurred, albeit unknowingly, when the doctor negligently performed the operation. In line with modern doctrine there could be no accrual of a cause of action for professional malpractice by either the husband or the wife until that malpractice was discovered. (See *Davies* v. *Krasna, supra,* 14 Cal.3d at pp. 512-513; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 182-190 [98 Cal.Rptr. 837, 491 P.2d 421]; *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312-313 [57 P.2d 908]; *Allred* v. *Bekins Wide World Van Services* (1975) 45 Cal.App.3d 984, 992 [120 Cal.Rptr. 312]; *Wozniak* v. *Peninsula Hospital* (1969) 1 Cal.App.3d 716, 722 [82 Cal.Rptr. 84]; *Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 567-570 [80 Cal.Rptr. 130]; *Mock* v. *Santa Monica Hospital* (1960) 187 Cal.App.2d 57, 63-64 [9 Cal.Rptr. 555]; *Pellett* v. *Sonotone Corp.* (1942) 55 Cal.App.2d 158, 160 [130 P.2d 181]; *Frohs* v. *Greene* (1969) 253 Ore. 1, 3-4 [452 P.2d 564, 565]; and 2 Witkin, *op.cit.,* §§ 267 and 316, pp. 1118-1119 and 1158-1160.) It is also recognized that in cases of progressive disease accrual is postponed until substantial damage accrues. (See *Coots* v. *Southern Pacific Co.* (1958) 49 Cal.2d 805, 810 [322 P.2d 460]; *Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338, 351 [18 P.2d 933, 86 A.L.R. 563]; and 2 Witkin, *op.cit.,* § 315, pp. 1157-1158.) Plaintiff also relies on cases dealing with alienation of affections; an action abolished in this state. (Civ. Code, § 43.5, subd. (a); *Ikuta* v. *Ikuta* (1950) 97 Cal.App.2d 787 [218 P.2d 854].) It formerly was recognized that the cause of action did not accrue until the errant spouse actually left the complaining spouse. (*Mohn* v. *Tingley* (1923) 191 Cal. 470, 474 [217 P. 733]. See also *Dobrient* v. *Ciskowski* (1972) 54 Wis.2d 419, 422-423 [195 N.W.2d 449, 450]; *Kasper* v. *Enich* (1953) 265 Wis. 318, 319-321 [61 N.W.2d 315, 316]; and *Gibson* v. *Gibson* (1968) 244 Ark. 327, 328 [424 S.W.2d 871, 873].)[5]

---

[5]We also take note that there is some parallel between an action for loss of consortium and an action for wrongful death. (See *Borer* v. *American Airlines, Inc., supra,* 19 Cal.3d

■    The plaintiff in this case, however, is in no position to claim that there was no discovery of the wrong that resulted in injuries to his wife, which in turn led to his loss of consortium. He has alleged that on March 28, 1973, the defendants' negligence proximately caused the injuries to his wife described in paragraph XI of the complaint. (See fn. 1 above.) The commentator in the annotation appended to the report of *Milde* v. *Leigh* in American Law Reports, Annotated (173 A.L.R. 750) noted: "In what may be termed the usual situation, where the loss of services or consortium is an immediate rather than a delayed consequence of the defendant's negligence or wrongful act causing physical injury to plaintiff's spouse, child, or employee—as in those negligence cases in which the fact of substantial physical injury of the direct victim of the tort is evident immediately after the negligent act, and the tortious act, the physical injury, and the initial loss of consortium or services are practically simultaneous events—it seems to be clear that as a practical matter the cause of action for loss of the consortium or services of the injured person would accrue and the statute of limitations commence to run thereon at the same time as would a cause of action to recover for the physical injuries, to wit, as of the time the physical injury was sustained, for in this situation that would be the time that the initial loss of consortium or services occurred." (173 A.L.R. at pp. 755-756. See *Basler* v. *Sacramento etc. Ry. Co.* (1913) 166 Cal. 33, 36-37 [134 P. 993]; and *Gottesman* v. *Simon* (1959) 169 Cal.App.2d 494, 503 [337 P.2d 906, 77 A.L.R.2d 620].) The facts alleged in the husband's cause of action appear to fall within the usual rule. The cases cited in the annotation for the proposition that some subsequent time of loss is the point of accrual are cases involving medical malpractice, and fall within well-recognized exceptions to the accrual of a cause of action for personal injury.

Plaintiff husband also asserts that his pleading falls within the rule that there can be no cause of action until there is damage. In *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], the court stated: "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or that threat of

---

441, 451-453; and *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, 387.) In such cases no cause of action accrues until death results. (See Code Civ. Proc., § 377; *Walton* v. *Southern Pac. Co.* (1935) 8 Cal.App.2d 290, 304 [48 P.2d 108]; *Tann* v. *Western Pac. Ry. Co.* (1919) 39 Cal.App. 377, 380 [178 P. 971]; *Marks* v. *Reissinger* (1917) 35 Cal.App. 44, 53 [169 P. 243]; and 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 785, subd. (c), p. 3083.) For reasons set forth below neither that rule nor the rules applicable in cases of alienation of affection are controlling here.

future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.]" (6 Cal.3d at p. 200. See also *Davies* v. *Krasna, supra,* 14 Cal.3d 502, 513; *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 230-234 [74 Cal.Rptr. 225, 449 P.2d 161]; and 2 Witkin, *op.cit.,* § 268, pp. 1119-1120.) The court in *Budd* added, "The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. "Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct. [Citations.] Ordinarily, the client has already suffered damage when he discovers his attorney's negligence, as occurred in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* pages 183-187. . . . In other cases, the infliction of the damage will alert the client to the attorney's negligence and thus the statute of limitations will then begin to run on any malpractice action. Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage." (6 Cal.3d at p. 201.) This is in keeping with the general rule stated in *Howe* v. *Pioneer Mfg. Co.* (1968) 262 Cal.App.2d 330 [68 Cal.Rptr. 617], as follows: "[W]hen the fact of injury and the identity of the party responsible for it are known, the failure to discover some or most of the resulting damage until later will not toll the running of the statute. [Citations.]" (262 Cal.App.2d at pp. 340-341. See also *Davies* v. *Krasna, supra,* 14 Cal.3d 502, 514-515; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 187; *Allred* v. *Bekins Wide World Van Services, supra,* 45 Cal.App.3d 984, 989-990; *Collins* v. *County of Los Angeles* (1966) 241 Cal.App.2d 451, 457-459 [50 Cal.Rptr. 586]; *Rubino* v. *Utah Canning Co.* (1954) 123 Cal.App.2d 18, 27-28 [266 P.2d 163]; *Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 773-774 [247 P.2d 133]; and 2 Witkin, *op.cit.,* §§ 264-265, pp. 1117-1118.) In the annotation referred to above the author recognized the same principle, when, after analyzing cases in which the court held that the noninjured spouse's cause of action arose when the other spouse was injured, stated: "These cases represent, in the main, applications of the general rule that where an injury, even though it be slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once." (173 A.L.R., at p. 758.)

The allegations in the husband's cause of action that as a result of the injuries received on March 28, 1973, the wife is incapable of taking care

of herself and in need of, and will need for the rest of her life, constant care and attention from her husband (¶ III, fn. 3 above), do not postpone the effect of the allegations that on March 28, 1973, she received the injuries to her body and shock and injury to her nervous system which caused that condition (¶ XI, fn. 1 above). Nor do the allegations in the childrens' causes of action, if recognized, that the foregoing condition of permanent incapability of self-care had its onset September 11, 1974, detract from the fact that she was injured prior to that date. It is clear that the husband's loss, although not recognized in this state as actionable at that time, was apparent on March 28, 1973. It was only a question of the degree of that loss that remained to be discovered.

On August 21, 1974, in *Rodriguez v. Bethlehem Steel Corp., supra,* the court stated: "We . . . declare that in California each spouse has a cause of action for loss of consortium, *as defined herein,* caused by a negligent or intentional injury to the other spouse by a third party." (12 Cal.3d at p. 408, italics added.) The court refers to "loss of conjugal fellowship and sexual relations" (*id.,* p. 385), " 'loss of . . . society, including any impairment of . . . capacity for sexual intercourse,' " and in the case of the husband "liability for loss of her services as well" (*id.,* p. 392, fn. 13, and accompanying text referring to §§ 693 and 695 of the Restatement of Torts as latter section redrafted 1969), "loss of companionship, emotional support, love, felicity and sexual relations" (*id.,* p. 400), "it is principally a form of mental suffering" (*id.,* p. 401), " '[T]he concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, social relations, solace and more' " (*id.,* p. 405, quoting from *Millington v. Southeastern Elevator Co.* (1968) 22 N.Y.2d 498 [293 N.Y.S.2d 305, 308, 36 A.L.R.3d 891]), and "destruction of the sexual life of the couple" (*id.*). The court, however, pointed out, "Nor is the wife's personal loss limited to her sexual rights. As we recognized in *Deshotel* [*Deshotel v. Atchison T. & S. F. Ry. Co.* (1958)] (50 Cal.2d [664] at p. 665 [328 P.2d 449]), consortium, includes 'conjugal society, comfort, affection, and companionship.' An important aspect of consortium is thus the *moral* support each spouse gives the other through the triumph and despair of life." (12 Cal.3d at p. 405. See also *Borer v. American Airlines, Inc., supra,* 19 Cal.3d 441, 444, which recognizes a child's loss of consortium, in refusing to render it actionable.) We, therefore, conclude that it is not only in cases with the disastrous injuries recounted in *Rodriguez* that a cause of action exists for loss of consortium. When "Geraldine Priola was hurt and injured in her health, strength and activity, sustaining injuries to her body, and shock and injury to her nervous system and person" on March

28, 1973, the husband's consortium was to some extent reduced and a cause of action arose. By alleging that more grievous injuries arose after the Supreme Court recognized the cause of action for loss of consortium, he does not escape the proscription of that case (12 Cal.3d at p. 408, fn. 30) against the assertion of a cause of action already barred. (See *Davies* v. *Krasna, supra,* 14 Cal.3d 502, 514-516; *Basler* v. *Sacramento etc. Ry. Co., supra,* 166 Cal. 33, 36-37; *Gottesman* v. *Simon, supra,* 169 Cal.App.2d 494, 503; and *Sonbergh* v. *MacQuarrie, supra,* 112 Cal.App.2d 771, 773-774; and *Berry* v. *Myrick* (1973) 260 S.C. 68, 70-72 [194 S.E.2d 240, 241-243].)

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.