[No. D056695. Fourth Dist., Div. One. June 1, 2011.]

CALIFORNIA RESTAURANT MANAGEMENT SYSTEMS, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent.

1584

COUNSEL

Harrison Patterson & O'Connor, Harry W. Harrison, James R. Patterson and Alisa A. Martin for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, Donald Worley, Assistant City Attorney, and David J. Karlin, Deputy City Attorney, for Defendant and Respondent.

OPINION

**McDONALD, Acting P. J.**—In March 2004 the City of San Diego (City) publically announced that the rate structure it had been using to bill users of City's wastewater system had resulted in excessive charges to several classes of users, including residential customers and some commercial and industrial customers. A residential customer, Mr. Shames, timely filed a governmental claim seeking a refund on behalf of residential customers who were overcharged and, after the claim was denied, filed a proposed class action lawsuit on behalf of that class (the Shames action).

After the Shames action was settled and dismissed, California Restaurant Management Systems (CRMS) filed its own governmental claim and then filed the instant putative class action on behalf of restaurant owners. City moved for summary judgment, contending CRMS's governmental claim was not timely filed and the failure to satisfy the jurisdictional prerequisite required dismissal of CRMS's proposed class action lawsuit. CRMS opposed the summary judgment motion, arguing the pendency of the Shames action tolled all limitations periods, including the period for filing a governmental claim. The trial court disagreed, and entered judgment in favor of City.

This appeal presents a question of first impression: whether the "equitable tolling" principles outlined in *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 [38 L.Ed.2d 713, 94 S.Ct. 756] (*American Pipe*) and *Crown, Cork & Seal Co. v. Parker* (1983) 462 U.S. 345 [76 L.Ed.2d 628, 103 S.Ct. 2392] (*Crown Cork*) apply to extend the period within which a claim must be filed under the Government Claims Act (Gov. Code, § 810 et seq.).[1] We conclude, on the facts presented here, CRMS's time to file its governmental claim on behalf of restaurants was not tolled by the Shames action, and therefore we affirm the judgment.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *City's Overcharges to Certain Customers*

City operates a regional wastewater treatment and disposal system. In late March 2004 City issued a report that its wastewater user rate charge system did not include any specific cost recovery component for organic materials. The report stated that, as a result of this omission, residential customers and certain commercial and industrial customers who discharged lower levels of organic materials into the sewer system were paying "a disproportionately high percentage of the overall costs of the Wastewater System than is appropriate."

### B. *The Shames Action*

On April 30, 2004, Mr. Shames filed a governmental claim pursuant to sections 910 and 945.4, on behalf of himself and a putative class composed of "residential property owners who are, or have been, customers of the City's water and sewer services ('the putative class')." The claim asserted a demand for a refund for alleged overcharges paid by the putative class, alleging that "certain commercial and industrial customers discharge wastewater with relatively higher concentration of organic matters than residential customers do," and that "[b]ecause the [wastewater] rates charged by the City do not account for organics, . . . residential customers have been charged disproportionately higher rates than commercial customers" in violation of the California Constitution.

The City denied the claim on May 14, 2004. Shames promptly filed his class action seeking refunds for residential property owners. The Shames action alleged that "[c]ommercial and industrial customers discharge wastewater with relatively higher concentration of organic pollutants than residential customers," that "[r]esidential property owners impact the City's sewer system at lower rates than commercial users because they discharge less organic pollutants," and that City "does not account for this disproportionate impact when charging sewer fees." Shames, defining the class as "[a]ll persons who own or have owned residential property [during the class period] and who have been charged sewer fees," alleged there were common issues of fact and law as to residential property owners' rights and sought a refund on their behalf. The Shames action alleged Shame had satisfied the governmental claim requirements because he had filed a claim "on behalf of himself and all City of San Diego residential property owners seeking a refund of sewer fee

overcharges [which] met the requirements of [Government Code sections 910 and 945.4]."

In mid-2004 the California Restaurant Association (CRA), a trade associa- tion that advocates on behalf of restaurants and related businesses, contacted Shames's attorney (Mr. Benink) to ask whether Benink could amend the Shames action to include food establishments within the class action.[2] Benink replied that it appeared that "some segments of commercial customers may have been overcharged in the same manner [as residential customers]," and that Benink had decided to amend the complaint to expand the class "to include all customers who were overcharged, rather than limiting it to residential customers." Benink observed that CRA's members "may be part of that class, if and when it is certified, and may potentially participate in any benefit we achieve for the class through this lawsuit." However, Benink cautioned his firm was not agreeing to specifically represent either CRA or any of its members, and they should seek their own attorney if they wanted representation.

In September 2004 Shames filed an amended complaint. He alleged that "[c]ommercial and industrial customers discharge wastewater with relatively higher concentration of organic pollutants than residential and other commer- cial customers do," and that because the rates charged by City "do not account for organic pollutants, . . . some customers have been charged disproportionately higher rates than commercial and industrial customers with higher usage." The amended complaint proposed an expanded class definition to define the putative class as "[c]ustomers . . . who, based on their relative contributions to overall system handling and processing requirements, . . . have paid or are paying, during the time period June 16, 2000[,] through October 1, 2004, a disproportionately higher percentage of the costs" (fn. omitted) of the wastewater system. However, Shames did not file an amended governmental claim seeking a refund on behalf of the newly defined class, and did not file a new governmental claim seeking a refund on behalf of the expanded class.

In April 2005 Shames filed his motion for class certification. Shames sought certification of a class defined *only* as single-family residential sewer

---

[2] In May 2004, and prior to contacting Benink, CRA had sent letters to City urging it to adjust the rate structure for food service establishments to account for the lower organic materials discharged by such establishments resulting from the ban on food grinders/garbage disposals and the use of grease traps/interceptors. CRA also sought support for a rebate or credit for such establishments to "recognize the years [restaurants were] overcharged due to the use of incorrect wastewater loadings." City responded that (1) under the existing scheme any establishment was entitled to have its rates adjusted based on the submission of actual wastewater discharge testing and (2) under a proposed new rate structure, City would adjust the rates for the entire food service class based on the use of grease traps and removal of garbage grinders if that new rate structure was approved.

customers.[3] While the certification motion was pending, Shames and City commenced and pursued a lengthy mediation process that in late 2006 resulted in a tentative settlement. Shames filed a motion for preliminary approval of the settlement in December 2006, and posted a notice to the class in February 2007.

In the spring of 2007, prior to the court's ruling on the final approval of the class settlement, CRA sought leave to amend the Shames action to (1) add CRA as a class representative and (2) have new attorneys appointed as class counsel. After the court denied that motion,[4] CRMS filed a motion for leave to amend the Shames action to allow CRMS to be a class representative. CRMS (along with CRA) also filed objections to the proposed settlement because it would prejudice the remaining putative members of the class not included in the settlement class. The court certified the class for residential customers, and then approved the settlement and dismissed the Shames action.

### C. *The Present Action*

Four days after dismissal of the Shames action, CRMS filed a governmental claim for wastewater rate refunds alleging City overcharged food establishments for sewer services. The claim alleged that food establishments were required to use grease traps and were barred from using food grinders/garbage disposals, but that wastewater loadings for food establishments were not adjusted to recognize these pretreatment measures, and therefore food establishments paid a disproportionately higher cost for sewer services. CRMS asserted that, as a member of the putative class in the Shames action, its claim was included within the Shames action and its cause of action was

---

[3] Benink later explained, in opposition to CRA's motion to amend the Shames action to add CRA as a named plaintiff and class representative and to have new counsel appointed as class counsel, that *subsequent investigation had led Benink away from the expanded class definition* alleged in the amended complaint and toward a narrower class definition that Benink was more confident about certifying. Among the reasons cited by Benink for seeking a narrower class was that individual commercial customers, unlike residential customers, were permitted to request adjustments to their "return to sewers" (an adjustment that reduced the amount paid each month) and commercial customers are assigned an initial billing rate based on their "SIC code" and are permitted to appeal default rates to request a different rate based on actual discharges. Benink also noted, although *City had admitted that all residential customers were aggrieved, only some of the commercial customers could claim damages related to organics,* which made certification of the class of residential customers more viable.

[4] The court denied the motion for numerous reasons, including that CRA was not an appropriate class representative, and that the amendment would prejudice the interests of the settlement class. At the hearing on CRA's motion, the city attorney (responding to the court's inquiry whether individual restaurants could bring their own claims were the motion to amend denied) stated *individual restaurants could benefit from the tolling effect of the Shames action,* but also stated City would still be able to interpose administrative claim defenses.

tolled during its pendency. It also asserted it had substantially complied with the administrative claim requirement via the claim asserted by Shames, and that City had waived the administrative claim requirement or, in the alternative, that any administrative claim time requirement was tolled during the pendency of the Shames action under principles of equitable estoppel. City denied the claim because it was not filed within one year of the accrual of CRMS's cause of action.

CRMS filed the present action in August 2007 as a putative class action on behalf of itself and other food establishments. The action asserted (1) any administrative claim requirement had been substantially complied with; (2) in the alternative, City waived and/or was equitably estopped from asserting a defense based on failure to exhaust administrative remedies because City had not raised that argument when the Shames complaint was amended to expand the class definition; and (3) in the alternative, any administrative claim requirement had been equitably tolled during the pendency of the Shames action.[5]

City moved for summary judgment, asserting that CRMS's governmental claim for a refund was not filed within one year of the accrual of the cause of action as required under section 911.2. CRMS opposed the motion, arguing City was equitably estopped from asserting CRMS's claim was untimely and that any administrative claim requirement had been equitably tolled during the pendency of the Shames action.[6] The trial court found no triable issues of material fact were present and City was entitled to judgment as a matter of law.

## II

### LEGAL FRAMEWORK

A. *Standard of Review*

Our "review [of] a grant of summary judgment [is] de novo; we must decide independently whether the facts not subject to triable dispute warrant

---

[5] City demurred based on failure to timely file an administrative claim, but the court overruled the demurrer because, although the claim filed by Shames did not satisfy the claim requirement for the present plaintiffs, the issue of estoppel could present factual issues not suitable for resolution on demurrer.

[6] CRMS also opposed the motion by arguing CRA's letters (see fn. 2, *ante*) substantially complied with the administrative claim requirement for CRMS's class action. However, CRMS raises no appellate argument suggesting the trial court's disposition of this contention was error, and we do not further consider it. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] ["[a]lthough our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief . . . [and issues] not raised in an appellant's brief are deemed waived or abandoned" (citations omitted)].)

judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296].)

### B. *Governmental Claim Presentation Principles*

■ The Government Claims Act (§ 810 et seq.) "establishes certain conditions precedent to the filing of a lawsuit against a public entity. As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. (§ 911.2.) The failure to do so bars the plaintiff from bringing suit against that entity. (§ 945.4.)" (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237 [13 Cal.Rptr.3d 534, 90 P.3d 116].) "[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action. . . . The failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity." (*Sparks v. Kern County Bd. of Supervisors* (2009) 173 Cal.App.4th 794, 798 [93 Cal.Rptr.3d 173], citation omitted.) "The policy underlying the claims presentation requirements is to afford prompt notice to public entities. This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities." (*Ibid.*)

■ Claims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action. (§ 911.2, subd. (a).) Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209 [64 Cal.Rptr.3d 210, 164 P.3d 630].) "Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity." (*Ibid.*)

■ The failure to timely present a claim to the public entity bars the claimant from filing a lawsuit against that public entity. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701] (*San Jose*).) Moreover, because the purpose of the claims is not "to prevent surprise [but rather] is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation . . . [citations][,] . . . [i]t is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge— standing alone—constitutes neither substantial compliance nor basis for estoppel." (*Id.* at p. 455.)

■ Ordinarily, a claimant must file his or her own claim. Courts have held that when one injured party timely files a claim with a government entity and another party also injured by the same transaction seeks to pursue a suit against the government entity without filing a separate claim, the second injured party may not rely on the claim filed by the original claimant if the injury suffered by the second injured party was distinct from the injury suffered by the claimant. (See, e.g., *Nguyen v. Los Angeles County Harbor/UCLA Medical Center* (1992) 8 Cal.App.4th 729, 733–735 [10 Cal.Rptr.2d 709] [claim filed for injured child does not permit parents to sue for negligent infliction of emotional distress]; *Pacific Tel. & Tel. Co. v. County of Riverside* (1980) 106 Cal.App.3d 183, 190–192 [165 Cal.Rptr. 29] (*Pacific Tel.*) [widow asserting wrongful death claim could not rely on claims filed by decedent's employer or workers' compensation carrier]; *Roberts v. State of California* (1974) 39 Cal.App.3d 844, 847–848 [114 Cal.Rptr. 518]; *Shelton v. Superior Court* (1976) 56 Cal.App.3d 66, 81–83 [128 Cal.Rptr. 454]; *Lewis v. City and County of San Francisco* (1971) 21 Cal.App.3d 339, 341 [98 Cal.Rptr. 407] [wrongful death plaintiffs could not rely on decedent's predeath tort claim for her personal injuries].)

However, in *San Jose, supra*, 12 Cal.3d 447, the court concluded that, to satisfy the governmental claim requirements as a prerequisite to filing a putative class action lawsuit, a claim by the class representative for himself and others similarly situated can be found sufficient to support an action on behalf of the others in the class without the necessity for each individual to file a claim, provided the filed claim is sufficient to satisfy the statutory purposes. The court noted:

■ "In determining the quantity of information required in a class claim to satisfy the provisions of [section 910], we note the cases gauging sufficiency of claims must be divided into two groups.

"The first treats claims where there has been *some* compliance with all the required elements—but compliance has been *defective*. [Citations.] In these cases the test of 'substantial compliance' controls: Is there sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit?

"In the second group of cases the courts have been less lenient. Here, claims were successfully challenged for failure to comply entirely with a particular statutory requirement. [Citations.] In determining the sufficiency of such claims, the more liberal test of substantial compliance has not been applied—the courts recognizing '[s]ubstantial compliance cannot be predicated upon no compliance.' [(Quoting *Hall v. City of Los Angeles* (1941) 19 Cal.2d 198, 202 [120 P.2d 13]; [citation].)]

"From these two groups, we conclude that to gauge the sufficiency of a particular claim, *two* tests shall be applied: Is there *some* compliance with *all* of the statutory requirements; and, if so, is this compliance sufficient to constitute *substantial* compliance?" (*San Jose, supra,* 12 Cal.3d at pp. 456–457.)

■ Considering these authorities, the *San Jose* court held that "to satisfy the claims statutes, the class claim must provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself. Because such information would meet the statutory requirements of name and address, *any* effort to identify the class would satisfy the *some compliance* test. Beyond this, the sufficiency of the identifying information must be measured by the *substantial compliance* test." (*San Jose, supra,* 12 Cal.3d at p. 457.)

C. *Equitable Tolling Principles*

*General Principles*

■ Equitable tolling is a "judicially created, nonstatutory doctrine" " 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' [Citation.] Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 [84 Cal.Rptr.3d 734, 194 P.3d 1026] (*McDonald*).) When equitable tolling is applied, the statute of limitations "*stops running* during the tolling event, and begins to run again only when the tolling event has concluded," which extends the deadline for filing the new action for the length of time of the tolling event. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 [2 Cal.Rptr.3d 655, 73 P.3d 517].)

■ "Broadly speaking, the doctrine applies ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." ' " (*McDonald, supra,* 45 Cal.4th at p. 100.) It can apply when administrative remedies must be exhausted before suit may be filed (*id.* at p. 101) or where a plaintiff has in good faith filed an initial action on his or her claim that is later found to be defective and then, after the expiration of the limitations period, brings a second action arising on the same claim that would be time-barred but for the application of equitable tolling.[7] (*Collier v.*

---

[7] CRMS, asserting on appeal that equitable tolling can also be applied to situations involving "attorney mistakes," argues equitable tolling should be applied to protect CRMS and other restaurant owners from the "egregious mistakes" by Shames's counsel. However, CRMS cites

*City of Pasadena* (1983) 142 Cal.App.3d 917, 924–925 [191 Cal.Rptr. 681].) Application of the equitable tolling doctrine in cases where multiple remedies exist "serves 'the need for harmony and the avoidance of chaos in the administration of justice.' [Citation.] Tolling eases the pressure on parties 'concurrently to seek redress in two separate forums with the attendant danger of conflicting decisions on the same issue.' [Citations.] By alleviating the fear of claim forfeiture, it affords grievants the opportunity to pursue informal remedies, a process we have repeatedly encouraged. [Citations.] The tolling doctrine does so without compromising defendants' significant 'interest in being promptly apprised of claims against them in order that they may gather and preserve evidence' because that notice interest is satisfied by the filing of the first proceeding that gives rise to tolling. [Citations.] Lastly, tolling benefits the court system by reducing the costs associated with a duplicative filing requirement, in many instances rendering later court proceedings either easier and cheaper to resolve or wholly unnecessary." (*McDonald, supra*, 45 Cal.4th at p. 100.)

■ In assessing whether a *statute of limitations* will be equitably tolled in a particular situation, the courts examine the presence or absence of three factors: "(1) timely notice to defendants in filing the first claim; (2) lack of prejudice to defendants in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiffs in filing the second claim." (*Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1100 [68 Cal.Rptr.2d 590].) The *Downs* court, elaborating on these three factors, explained: " 'The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second.' [Citation.] 'The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.' [Citation.] 'The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison* v. *State of California* [(1978)] 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941][,] the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended.' " (*Downs*, at p. 1100.)

nothing in the record to suggest this contention was interposed below, and we have found nothing in the record to suggest this argument was raised in opposition to City's motion for summary judgment. When an argument is not asserted below in opposition to a motion for summary judgment, it is deemed waived and will not be considered for the first time on appeal to reverse an order granting summary judgment. (See, e.g., *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [72 Cal.Rptr.2d 232].)

### Equitable Tolling in Class Action Context

The doctrine of equitable tolling has been applied in the context of class action lawsuits to toll a statute of limitations. In *American Pipe, supra,* 414 U.S. 538, and *Crown Cork, supra,* 462 U.S. 345, the United States Supreme Court concluded that, under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.), the filing of the class action can toll the statute of limitations with respect to individual members of the putative class until the class is denied certification. (*American Pipe,* at pp. 552–553; *Crown Cork,* at p. 350 [holding the "filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' [citation], not just as to intervenors"].) The *Crown Cork* court explained that, absent tolling, "[t]he principal purposes of the class-action procedure—promotion of efficiency and economy of litigation—would thereby be frustrated. [Citation.] To protect the policies behind the class-action procedure, the [*American Pipe*] Court held that 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' " (*Crown Cork, supra,* at p. 349.)

In *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923], the court evaluated whether the *American Pipe/Crown Cork* tolling rule would apply to mass-tort class actions in California. The *Jolly* court observed that "[u]nderlying the tolling rule of *American Pipe* were two major policy considerations. The first was the protection of the class action device. In cases where class certification is denied for what the high court characterized as 'subtle factors,' unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to 'file protective motions to intervene or to join in the event that a class was later found unsuitable,' depriving class actions 'of the efficiency and economy of litigation which is a principal purpose of the procedure.' [(Quoting *American Pipe, supra,* 414 U.S. at p. 553; [citation].)]

"The second consideration involved the effectuation of the purposes of the statute of limitations. 'The policies of ensuring essential fairness to defendants and of barring a plaintiff who has "slept on his rights," ' the high court stated, 'are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.' [(Quoting *American Pipe, supra,* 414 U.S. at pp. 554–555.)] In these circumstances, the court concluded, the purposes of the statute of

limitations would not be violated by a decision to toll." (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at p. 1121.)

However, after considering these two purposes, the *Jolly* court ultimately held that equitable tolling would *not* be applied to the particular class action under consideration there, because it concluded the class action lawsuit "neither sufficiently put defendants on notice of the substance and nature of plaintiff's claims, nor served to further economy and efficiency of litigation . . . ." (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at p. 1122.) *Jolly* noted that because the class action lawsuit "never put defendants on notice that personal injury damages were being sought on a class basis, it would be unfair to defendants to toll the statute of limitations on such personal injury actions." (*Id.* at p. 1125.)

### *Equitable Tolling of Governmental Claim Requirement*

Although equitable tolling principles have been applied to toll *statutes of limitations,* the parties have cited no cases that have considered whether the pendency of a prior class action lawsuit can equitably toll *the time for filing a governmental claim.*[8] Indeed, the parties have cited no cases addressing whether, as here, a prior class action lawsuit in which the class was ultimately *certified* and the claims of the certified class were *resolved* can toll *either* the statute of limitations *or* the governmental claim requirements for claims by persons not within the class. Accordingly, we are presented with a question of first impression: whether, on the facts presented here, "equitable tolling" principles apply to extend the period within which CRMS was required to file a governmental claim.[9]

---

[8] The only Supreme Court case that mentions this question, *Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270 [228 Cal.Rptr. 190, 721 P.2d 71], found it unnecessary to reach the plaintiff's equitable tolling argument because it concluded the plaintiff should have been granted relief under section 946.6 to file a late claim. (42 Cal.3d at pp. 279–281 & fn. 7.) CRMS did not pursue relief under that section.

[9] City cites *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071 [195 Cal.Rptr. 576] to argue there is authority that a prior action does *not* toll the governmental claim requirement. In *Loehr,* the plaintiff was discharged by the public entity and, two years later, instituted a state court action seeking damages and reinstatement. The defendants demurred, alleging it was barred by various statutes of limitation and specifically by the plaintiff's failure to file a governmental claim. The court, affirming the judgment of dismissal, held that (1) a letter the plaintiff wrote to the board demanding reinstatement did not constitute substantial compliance with the filing requirements (*id.* at pp. 1082–1084), and (2) his federal court civil rights action (which *had* been filed before the expiration of the governmental claims filing period) (*id.* at p. 1077) did not toll the time for filing a governmental claim under the equitable tolling doctrine (*id.* at pp. 1084–1086). However, the court's rationale for the latter holding was that each of the causes of action asserted in the state court complaint was predicated on different wrongs and sets of facts from those set forth in the federal suit, and the type and amount of evidence needed to defend against the state action were significantly

III

ANALYSIS

We conclude a prior class action does not equitably toll or satisfy the governmental claim requirement for claimants *not* within the class description contained in a timely filed governmental claim on which the prior class action was predicated. We further conclude that, because the Shames *claim* did not include CRMS, the Shames *action* cannot satisfy or toll the governmental claim requirement for CRMS.

As previously discussed, a plaintiff must ordinarily file his or her own claim and may not sue to recover for his or her own injury in reliance on a claim filed by another injured party, even if the plaintiff's injury was caused by the same transaction that injured the other party. (See *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 796 [6 Cal.Rptr.3d 650]; *Nguyen v. Los Angeles County Harbor/UCLA Medical Center, supra,* 8 Cal.App.4th at pp. 733–735; *Roberts v. State of California, supra,* 39 Cal.App.3d at pp. 847–848; *Pacific Tel., supra,* 106 Cal.App.3d at pp. 190–192; *Shelton v. Superior Court, supra,* 56 Cal.App.3d at pp. 81–83.) This requirement is grounded in the recognition that " '[i]t is not the purpose of the claims statutes to prevent surprise' " (*Pacific Tel.,* at p. 191), but instead the "purpose of the claim requirements is to provide a public entity with sufficient information to enable it to investigate and evaluate the merits of claims, assess liability, and, where appropriate, to settle claims without the expense of litigation" (*Nguyen,* at p. 732). These authorities make clear that, if Shames had filed his claim for a refund solely in his individual name and thereafter sued individually for a refund, the fact CRMS suffered injury from the same operative facts would not have permitted CRMS to sue for a refund without timely filing its own governmental claim.

However, the Shames claim was not filed solely for himself. Instead, it expressly stated it sought a refund of overcharges paid by "[Shames] and a class of City of San Diego . . . residential property owners who are, or have been, customers of the City's water and sewer services ('the putative class')," thereby coming within the exception identified in *San Jose, supra,* 12 Cal.3d 447. The *San Jose* court explained that a claim on behalf of a proposed class will satisfy the governmental claim statute for class members and thereby

---

dissimilar to those that would have been needed to oppose the federal litigation. Under those circumstances, the filing of the federal suit did not provide timely notice to the defendants of the causes of action subsequently alleged in the state court complaint, rendering equitable tolling inapplicable. (*Id.* at pp. 1084–1086.) *Loehr*'s analysis did not peremptorily reject the possibility of tolling a governmental claim requirement, but instead engaged in a fact-specific analysis to determine equitable tolling would not apply in that action.

permit a class action on their behalf against the public entity *if* it (1) identifies and provides the requisite information for the representative plaintiff, *and* (2) provides "*sufficient information to identify and make ascertainable the class itself.*" (*Id.* at p. 457, italics added.)

CRMS cannot rely on the Shames claim to satisfy the government claim statute and thereby permit a class action against City on behalf of commercial customers of City because, although the Shames claim identified some of the requisite information for *Shames* as an individual, it did not provide any information that would have enabled City to identify and ascertain that the class (on behalf of which the claim was filed) would include commercial customers of City. In *Pacific Tel., supra,* 106 Cal.App.3d 183, the court applied the *San Jose* test to determine whether a widow, who had not filed her own governmental claim, could nevertheless pursue her wrongful death claim by filing a complaint in intervention in an existing action brought by an employer against the entity when the employer had timely filed a claim. The widow argued that, because the employer's claim was in effect a claim on behalf of a class to which she belonged, her action could proceed based on the employer's claim. Rejecting that argument, the *Pacific Tel.* court explained:

"Assuming arguendo that the employer filed a claim as a representative of a class . . . , it does not follow that the claim for damages filed by the employer satisfied the claims statute with respect to another member of the class who suffered different damages as a result of the same tortious event. . . . [¶] Widow argues that the claim filed by the employer constituted substantial compliance with the claims statute insofar as the claim for wrongful death was concerned because 'the policy behind the claim requirement has been substantially satisfied.' . . . [¶] However, it is clear in this case that the claim of the employer did not satisfy the substantial compliance test insofar as widow's claim for damages for wrongful death is concerned. *The employer's claim merely averred the circumstances of the accident and sought reimbursement of workers' compensation benefits paid. It did not give the County notice of the fact that widow claimed damages for the wrongful death of her husband nor the extent of the damages claimed.*

" 'It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for

estoppel. [Citations.]' [(Quoting *San Jose, supra,* 12 Cal.3d at p. 455.)] [¶] . . . [¶]

"We conclude, therefore, that even if the employer's action could be regarded as a class action . . . , the claim filed by the employer did not relieve widow of the necessity of filing a claim for damages for wrongful death." (*Pacific Tel., supra,* 106 Cal.App.3d at pp. 190–192, italics added.)

Similarly, the Shames claim merely averred the circumstances of the alleged overcharging and notified City it would be seeking refunds for Shames and residential owners. It did not give City notice that CRMS (either individually or as a member of some undefined class of commercial property owners) would be seeking a refund, and did not apprise City of the extent of the potential refunds that might be sought by such undefined class of commercial property owners. (Accord, *Eaton v. Ventura Port Dist.* (1975) 45 Cal.App.3d 862, 868 [119 Cal.Rptr. 746] [claim purporting to be on behalf of class but not containing " 'sufficient information to identify and make ascertainable the class itself' " could not support suit by unnamed and inadequately identified plaintiffs].) We conclude the fact that a residential owner filed a governmental claim on behalf of *residential* owners did not relieve *non*residential owners from the requirement of filing a governmental claim.

Moreover, although the filing of the Shames claim and pendency of the Shames action arguably satisfied the claim requirement for members of the identified class (e.g., residential owners) and would have tolled the limitations period for residential owners to file their own actions if the Shames action had not been settled or resolved on its merits, it did not have any effect on persons or entities who were strangers to the claim, even though they may have been injured by the same transaction identified in the Shames claim. (See·*Pacific Tel., supra,* 106 Cal.App.3d at p. 192 [Fact employer's filing suit might have tolled statute of limitations on widow's action "does not mean that the employer's filing of a claim for reimbursement of workers' compensation benefits relieved her of the necessity of filing a claim . . . ." "[T]he purpose of the claims statute is to 'provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' [Citation.] . . . [T]he claim filed by the employer did not fulfill the purposes of the claims statute with respect to the widow's claim . . . ."].)

CRMS asserts, however, that tolling should be applied because Shames later *amended* his complaint to expand the class beyond those members identified in the Shames claim. However, because neither Shames

nor any other person filed a claim on behalf of the newly expanded class, and Shames did not seek to amend his claim (see § 910.6) to seek a refund for the newly expanded class, we do not agree the mere filing of an amended *complaint* somehow excused the requirement for filing a governmental claim on behalf of the expanded class. To the contrary, to the extent the amended complaint is relevant, the substance of that amendment was to purport to state causes of action against a public entity by a *new* group of plaintiffs for whom *no* claim had been filed (e.g., "[*all*] [c]ustomers [who paid] a disproportionately higher percentage of the costs" of the wastewater system), rather than causes of action on behalf of the group of plaintiffs for whom a claim *had* been filed (e.g., "*residential property owners*" who paid a disproportionately higher percentage of the costs of the wastewater system). A cause of action may not be *filed* against a public entity by a party that is required to but did not file a timely governmental claim, and therefore the purported effort to *amend* the complaint to state causes of action against City by a group of plaintiffs for whom no claim had been filed can have no effect.[10]

We are unpersuaded that the *American Pipe/Crown Cork* tolling doctrine can be transferred from its limited context—tolling of statutes of limitations for class members if the classwide pursuit of the claim falters—to also toll the distinct time limits for filing a governmental claim. As the *Crown Cork* court observed, " 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class *who would have been parties had the suit been permitted to continue as a class action.*' " (*Crown Cork, supra*, 462 U.S. at p. 349, italics added.) However, we have concluded CRMS would *not* have been a party to the Shames action had it continued as a class action because the Shames *claim* did not contain sufficient information (under the *San Jose* test) to identify or make ascertainable that the class for which the claim was filed would have included CRMS or other restaurant owners. Because the governmental claim requirement serves purposes distinct from and in addition to purposes served by general statutes of limitations, we are not persuaded by CRMS's argument that tolling principles applicable to the latter should be superimposed on the former.

---

[10] Although City did not demur to the amended complaint on that ground, we ascribe no significance to that omission. In *Nelson v. County of Los Angeles, supra*, 113 Cal.App.4th at pages 797–798, the court "summarily reject[ed] Mrs. Nelson's related contention that the County was required to notify her that her claim form was insufficient. A public entity's duty to notify a claimant that the claim form is 'defective' necessarily presumes the defect is disclosed on the face of the form. [Citation.] The problem here is not that Mrs. Nelson's claim was defective, but that no claim at all was filed by or on behalf of Dwayne's estate." Similarly, the problem here was not that the Shames claim on behalf of residential owners was defective, but that there was no claim filed at all by the nonresidential owners purportedly added by the amendment.

## DISPOSITION

The judgment is affirmed. City is entitled to costs on appeal.

McIntyre, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 24, 2011, S194710.