Filed 7/12/16  Certified for publication 8/4/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE KIND AND COMPASSIONATE et al., | B258806 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC 483024) |
| v. | |
| CITY OF LONG BEACH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. John Shepard Wiley, Jr., Judge.  Affirmed.

Matthew Pappas; Rallo Law Firm, Arthur J. Travieso and Amy L. Bingham for Plaintiffs and Appellants.

Charles Parkin, City Attorney, and Theodore B. Zinger, Deputy City Attorney, for Defendants and Respondents.

_____

## SUMMARY

This is an appeal from a judgment dismissing a complaint after the trial court sustained a demurrer. The court granted leave to amend, but plaintiffs never did.

Plaintiffs are two medical cannabis "collectives/dispensaries" (The Kind and Compassionate, and Final Cut) and three medical cannabis patients, who are members of The Kind and Compassionate collective. Plaintiffs alleged 11 causes of action against the City of Long Beach (city) and/or three of its employees or officers (Eric Sund, Robert Shannon and Robert Foster), all arising from the city's enforcement of municipal ordinances that first regulated and then entirely prohibited the operation of medical marijuana dispensaries within the city's borders. The principal claim in the complaint is that defendants have discriminated against plaintiffs by enacting and enforcing these ordinances, which plaintiffs assert are facially discriminatory and have a disparate and adverse impact on persons with disabilities. Plaintiffs also assert various constitutional violations and tort claims.

We affirm the trial court's judgment dismissing the complaint.

## FACTS AND LEGAL BACKGROUND

Before we turn to the facts alleged in the complaint, we briefly note several established principles applicable to medical marijuana dispensaries or collectives.

First, federal law prohibits the possession, distribution and manufacture of marijuana, finding it to be "a drug with 'no currently accepted medical use in treatment in the United States' [citation], and there is no medical necessity exception to prosecution and conviction under the federal act [citation]." (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 738-739 (*Riverside*).)

Second, California law also imposes sanctions on marijuana possession, cultivation, and related activities. In California, however, voters and the Legislature have adopted limited exceptions to those sanctions where marijuana is possessed, cultivated, distributed and transported for medical purposes. (*Riverside, supra,* 56 Cal.4th at p. 739.) These statutes are the Compassionate Use Act (CUA; Health & Saf. Code, § 11362.5), adopted by the voters in 1996, and the Medical Marijuana Program (MMP; § 11362.7 et

2

seq.), enacted in 2004. "Among other things, these statutes exempt the 'collective[] or cooperative[] . . . cultiva[tion]' of medical marijuana by qualified patients and their designated caregivers from prosecution or abatement under specified state criminal and nuisance laws that would otherwise prohibit those activities." (*Riverside*, at p. 737.)

Third, the CUA and the MMP "have no effect on the federal enforceability of the [Controlled Substances Act (21 U.S.C § 801 et seq.)] in California." (*Riverside, supra,* 56 Cal.4th at p. 740.) The CUA and the MMP have a "narrow reach" (*Riverside*, at p. 745), providing only "a limited immunity *from specified state marijuana laws*" (*id.* at p. 748).

Fourth, "the CUA and the MMP do not expressly or impliedly preempt [a city's] zoning provisions declaring a medical marijuana dispensary . . . to be a prohibited use, and a public nuisance, anywhere within the city limits." (*Riverside, supra,* 56 Cal.4th at p. 752; *id.* at p. 754, fn. 8 ["the CUA and the MMP, by their substantive terms, grant limited exemptions from certain *state* criminal and nuisance laws, but they do not expressly or impliedly *restrict* the authority of local jurisdictions to decide whether local land may be used to operate medical marijuana facilities"].)

Fifth, the Ninth Circuit has held that "medical marijuana use is not protected by the ADA [(Americans with Disabilities Act (42 U.S.C. § 12101 et seq.))]," because the ADA "defines 'illegal drug use' by reference to federal, rather than state, law, and federal law does not authorize the plaintiffs' medical marijuana use." (*James v. City of Costa Mesa* (9th Cir. 2012) 700 F.3d 394, 397.)

With this background in mind, we turn to the complaint.

1.      **The Complaint**

The complaint stated the intention to seek class certification of a class of patients and a class of collectives. The patient class members suffer from physical or mental disabilities, serious illnesses or permanent injury that limits a major life activity; are, or were, members of medical marijuana patient collectives; and qualify for protection under federal and state laws applicable to persons with disabilities. Each member of the collective class is a nonprofit group consisting of member patients, or authorized

3

caregivers of patients, who associate together to form the members of the collective class "for the purpose of mitigating their respective disabilities/conditions."

The 43-page complaint includes numerous conclusions of fact and law that we do not, under principles of appellate review, assume to be true. The following summary includes the pertinent factual allegations.

The complaint recited facts concerning voter approval of the CUA in 1996 and the MMP in 2003; the city's passage on March 17, 2010 of an ordinance regulating medical marijuana patient collectives (Long Beach Mun. Code, former ch. 5.87) (hereafter chapter 5.87 or the March 2010 ordinance); comments by city officials stating their views on the ordinance and medical marijuana collectives; and the city's implementation, "between March 17, 2010 and June 1, 2010," of a permit lottery and permit fee schedule requiring large application and annual permit fees.

Plaintiffs alleged that pharmacies, medical clinics, medical treatment programs, methadone clinics and organic nutritional providers are "comparable uses" to medical marijuana collectives. The complaint alleges these comparable uses are not subject to various restrictions (such as location or spacing requirements); that various fees charged to the collectives were substantially higher than fees paid by comparable uses; and that additional taxes imposed on collectives in December 2010 were not charged to comparable uses.

The complaint described litigation initiated on August 30, 2010, that challenged the enforcement of chapter 5.87 on constitutional grounds. (This litigation culminated in an appellate decision, issued on October 4, 2011, holding that the permit provisions of chapter 5.87, including the fees and lottery system, were preempted by federal law, because those provisions authorized conduct that federal law forbids. The Supreme Court granted a petition for review, but later dismissed review as moot after the city repealed chapter 5.87 and replaced it with an ordinance imposing a complete ban on medical marijuana collectives within the city (chapter 5.89 or the February 2012 ban). (See *Pack v. Superior Court* (2011) 199 Cal.App.4th 1070, review granted Jan. 18, 2012, S197169, review dismissed Aug. 22, 2012.))

4

Between August 2010 and October 5, 2011, defendants and other city and police officers issued "multiple administrative citations" to plaintiff class members, charging violations of chapter 5.87 and ordering them to pay fines. During the same period, city employees "contacted and threatened the landlords" of properties leased by class members and issued multiple administrative citations to the landlords; threatened class members "with citations, fines, arrest, and harassment" based on "discriminatory animus" toward medical marijuana patients or based on alleged violations of chapter 5.87; and "issued at least 150 criminal citations and charged patients with violation" of chapter 5.87.

The city has continued to enforce chapter 5.89 (the February 2012 ban) through "warrantless and/or improper raids" of the collective class members, "arrest, booking, and charging of patients," "multiple citations," "harassment" of patient class members based on chapter 5.89, and "seizure of property and medication."

The complaint alleged that the enactment and enforcement of both chapter 5.87 and the February 2012 ban violated six statutes: Civil Code section 54 (the Disabled Persons Act or DPA); Civil Code section 51 (the Unruh Civil Rights Act or Unruh Act); the ADA; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); Civil Code section 52.1 (the Bane Act); and the Federal Civil Rights Act (42 U.S.C. § 1983) (section 1983). As to those claims, the complaint further alleged as follows.

Before May 2, 2010, medical marijuana collectives opened in the city and operated "with a business license under various categories . . . ." The city enacted chapter 5.87, requiring any existing collective to immediately cease operation, in violation of provisions protecting their "vested rights." Chapter 5.87 made lawful businesses illegal without a hearing in violation of various enumerated federal and state constitutional rights.

Each of the members of the collective class applied for permits and complied with all requirements in chapter 5.87, but the city failed to notify any of them whether their applications had been approved or denied. Between May 2010 and October 2010, each of the collective class members established or reestablished leases, and expended money,

5

executed contracts, and paid for improvements based on the express provisions of the ordinance.

The complaint alleged that in or after September 2010, the city conducted the permit lottery, and on October 12, 2010, "each of the . . . collective class members were notified they had prevailed in [the city's] marijuana permit lottery." Between October 12, 2010 and January 11, 2012 [*sic*], each of the class members "expended money, executed contracts, and paid for improvements based on their selection in the marijuana permit lottery."

The collective class members "were legally established" before enactment of chapter 5.89 banning the operation of medical marijuana dispensaries on February 24, 2012, and they relied on provisions of the city's municipal code protecting their vested rights. The city failed to comply with state and city charter public notice and hearing requirements before enactment of chapter 5.89. The collective class members "had real property rights and interests, including but not limited to leaseholds, that were effectively taken away" by chapter 5.89, in violation of their constitutional rights.

Based on the allegations summarized above, plaintiffs alleged causes of action for violation of the DPA, the Unruh Act, the ADA, and the Rehabilitation Act (first through fourth causes of action). Plaintiffs further alleged constitutional violations remediable under the Bane Act and section 1983 (fifth and sixth causes of action); tortious interference with business relations (against defendants Sund and Shannon, eighth cause of action); intentional infliction of emotional distress and civil conspiracy (against the individual defendants, ninth and tenth causes of action). (There was no seventh cause of action.)

Finally, plaintiffs sought declaratory and injunctive relief (11th and 12th causes of action), declaring that chapter 5.89 banning medical marijuana dispensaries as a public nuisance is illegal, void and unenforceable, and prohibiting enforcement of chapter 5.89.

2.      **The Trial Court's Rulings**

On January 14, 2014, the court sustained the city's demurrer, with leave to amend and gave plaintiffs 30 days to file a second amended complaint. Plaintiffs did not file an

amended complaint, and the city filed a motion to dismiss for failure to amend. The motion was not heard until July 21, 2014. Counsel for plaintiffs did not appear, and the court dismissed the case. On October 22, 2014, the court entered a judgment of dismissal.

Plaintiffs filed a notice of appeal on September 8, 2014. We deem the appeal to have been taken from the judgment of dismissal.

## DISCUSSION

### 1. Standard of Review

A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### 2. Plaintiffs' Causes of Action

In their opening brief, plaintiffs contend there was no basis in law for the trial court's ruling sustaining defendants' demurrer. In their reply brief, with new attorneys, plaintiffs tell us the previous attorney "most egregiously failed to file the Second Amended Complaint," and that plaintiffs are "able and willing to amend the complaint to cure the defects . . . ." But their briefs are entirely silent on how the complaint could be amended to state a legally sufficient claim as to any of their causes of action.

At oral argument, counsel stated that plaintiffs did not wish to relitigate the issues on demurrer, effectively conceding that the trial court correctly sustained the city's demurrer to the first amended complaint. Instead, counsel asserted this court should provide a remedy for previous counsel's negligent failure to file a second amended complaint. That, of course, is not within the scope of appellate review of the trial court's dismissal order. Where there is no error by the trial court, there is no basis for reversal of the judgment of dismissal.

To avoid any ambiguity in the appellate record, we explain *post*, despite counsel's concession, why the trial court's rulings were correct. Because the trial court properly

7

granted the demurrer to each cause of action in the operative first amended complaint, and plaintiffs have not demonstrated any reasonable possibility that the defects can be cured by amendment, the judgment dismissing the complaint must be affirmed.

We note one preliminary point. The city contends that plaintiffs' state law claims are barred by failure to comply with the pre-suit filing requirements of the Government Claims Act. (Compliance is not required for federal civil rights claims.) The city is correct, but only to the extent the complaint alleges state law claims for damages based on the alleged invalidity of chapter 5.89 (the February 2012 ban). As to those claims – which are not viable in any event, as will be seen from the discussion *post* – plaintiffs did not comply with the pre-suit claims presentation requirement of the Government Claims Act. Counsel for plaintiffs filed a claim with the city dated October 15, 2011 (and the city attorney rejected the claim on November 8, 2011). The claim letter predated the enactment of chapter 5.89, and plaintiffs do not identify any other pre-suit claim. However, the city's other contentions based on Government Claims Act requirements must be rejected, as explained in the margin.[1]

---

[1]     The Government Claims Act requires a plaintiff to file a timely claim for money or damages with the public entity as a condition precedent to the filing of a lawsuit. Failure to do so bars the lawsuit, " 'even in face of the public entity's actual knowledge of the circumstances surrounding the claim.' " (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591 (*California Restaurant Management*).) "Claims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action." (*Ibid.*, citing Gov. Code, § 911.2, subd. (a).) The date of accrual is the date "that would pertain under the statute of limitations applicable to a dispute between private litigants." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208-209.)

The city contends that the October 15, 2011 claim letter filed by counsel for plaintiffs was untimely, apparently on the ground that their causes of action accrued when chapter 5.87 became effective in 2010, and because plaintiffs alleged in their complaint that the city began enforcing chapter 5.87 on August 30, 2010. However, tort claims for intentional infliction of emotional distress, or interference with contract, or Bane Act violations, would accrue on the date on which a specific incident occurred – not "when Chapter 5.87 became effective in 2010." While some of the incidents – none of which, as

8

### a.   The discrimination claims

The bulk of plaintiffs' 43-page opening brief is devoted to its assertions that the city ordinances regulating, and then banning medical marijuana dispensaries discriminate against persons with disabilities. This claim has no merit, and the trial court properly sustained the city's demurrer to plaintiffs' causes of action for violations of the DPA, the Unruh Act, the ADA, and the Rehabilitation Act.

Our conclusion is controlled by now well-established principles: "[The CUA and the MMP] remove state-level criminal and civil sanctions from specified medical marijuana activities, but they do not establish a comprehensive state system of legalized medical marijuana; or grant a 'right' of convenient access to marijuana for medicinal use; or override the zoning, licensing, and police powers of local jurisdictions; or mandate

---

we discuss *post*, are sufficiently alleged – may have occurred more than six months before the claim was filed, others would have been timely. Thus the state causes of action cannot be dismissed on this basis.

The city also observes that the three plaintiffs named in the initial complaint –The Kind and Compassionate, Final Cut, and Lawrence King – were not among the claimants named in the October 15, 2011 claim letter. However, the claim letter specified the intention to sue as a class, and included among those who would be suing "all patient members of any and all patient collectives that were subjected to closure, raid, citation, harassment and/or other action . . . between August 30, 2010 and October 15, 2011 . . . ." While ordinarily a claimant must file his or her own claim, that is not so in the case of a putative class action lawsuit, "provided the filed claim is sufficient to satisfy the statutory purposes." (*California Restaurant Management, supra,* 195 Cal.App.4th at p. 1592.) The city does not mention this principle, or explain why it does not apply here.

Finally, the city contends that even if the claim was presented timely, the causes of action for intentional infliction of emotional distress and conspiracy were not reflected in the claim. But the cases the city cites to support this contention stand for the principle that a complaint "is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." (*Donohue v. State of California* (1986) 178 Cal.App.3d 795, 802.) While we conclude *post* that plaintiffs do not sufficiently allege causes of action for intentional infliction of emotional distress and conspiracy, the claim letter alleges the same facts plaintiffs allege in their complaint (e.g., "incidents of harassment, arrest, citation, attack," and so on).

local accommodation of medical marijuana cooperatives, collectives, or dispensaries." (*Riverside, supra,* 56 Cal.4th at pp. 762-763; see also *Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029, 1048 ["[i]t is too late in the day . . . to argue that the CUA and MMP[] grant a statutory right to use and/or collectively cultivate medical marijuana"]; *Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1553 (*Conejo Wellness Center*) [neither the CUA nor the MMP creates "a state right to cultivate, distribute, or otherwise obtain marijuana collectively, and thereafter to possess and use it, for medical purposes"].)

Plaintiffs argue at great length that *Riverside* did not involve discrimination claims, and they "disagree" with the principle that the CUA and the MMP do not confer a right to use and distribute marijuana. Our Supreme Court in *Riverside* definitively held that neither the CUA nor the MMP grant a " 'right' of convenient access to marijuana for medicinal use . . . ." (*Riverside, supra,* 56 Cal.4th at p. 762.) That being so, municipal regulation of, and bans on, medical marijuana dispensaries cannot operate to discriminate against persons with disabilities, because those persons have no right of convenient access to medicinal marijuana in the first place.

In addition to that fundamental point, neither the DPA nor the Unruh Act has any application to plaintiffs' desire to use, sell, or have convenient access to medicinal marijuana. The DPA gives individuals with disabilities "the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." (Civ. Code, § 54, subd. (a).) The DPA does not give them the right to convenient access to marijuana. The Unruh Act entitles all persons, including those with disabilities, to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) It does not entitle anyone to convenient access to medicinal marijuana.

The cited sections of the DPA and the Unruh Act both contain subdivisions stating in substance that "[a] violation of the right of an individual under the [ADA] also

10

constitutes a violation of this section." (Civ. Code, § 54, subd. (c); see § 51, subd. (f).) This does not assist plaintiffs either, because medical marijuana use is not protected by the ADA. Even as to plaintiffs "who face debilitating pain," Congress "has made clear . . . that the ADA defines 'illegal drug use' by reference to federal, rather than state, law, and federal law does not authorize the plaintiffs' medical marijuana use." (*James v. City of Costa Mesa, supra,* 700 F.3d at p. 397.)

This disposes of plaintiffs' discrimination claims under the DPA, the Unruh Act and the ADA. That leaves their claim under the Rehabilitation Act of 1973, which protects qualified individuals with disabilities from discrimination under, or the denial of the benefits of, "any program or activity receiving Federal financial assistance." (29 U.S.C. § 794(a).) Except for an allegation that the city "receives federal funding," the complaint fails to state any facts supporting the claim. The claim fails on the same basis as plaintiffs' other disability discrimination claims: there is no right to convenient access to marijuana. (See also *Assenberg v. Anacortes Housing Authority* (9th Cir. 2008) 268 Fed. Appx. 643, 644 [affirming eviction based on illegal drug use and rejecting medical necessity defense by medical marijuana user; "[t]he Fair Housing Act, [ADA], and Rehabilitation Act all expressly exclude illegal drug use"].)

### b. Claims of constitutional violations and state tort claims

### i. The Bane Act

The Bane Act permits a civil action for damages "for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion, and whether or not state action is involved." (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 843.)

The complaint alleges that, between August 2010 and October 5, 2011, city employees "contacted and threatened the landlords" of property plaintiffs leased and issued administrative citations to the landlords; "threatened each of the [patient class member] plaintiffs with administrative action and criminal arrest" under chapter 5.87; and "threatened the [patient class] members . . . with citations, fines, arrest, and harassment . . . ." Plaintiffs allege that the "threatening, intimidating, and/or coercive

11

enforcement actions complained of herein" have interfered with their rights under the California Constitution (art. 1, §§ 3, 7, 13, 17, and 19) and the Fourth, Fifth, Sixth, Eighth, and 14th Amendments to the federal Constitution. (The California provisions involve open meetings, due process and equal protection, search and seizure, excessive fines, and eminent domain.)

We see no error in sustaining the city's demurrer to this cause of action. Simply put, there is no federal or state law granting plaintiffs the right to lease property to operate a marijuana collective, so defendants could not have interfered with any such right.

Plaintiffs' briefs on appeal shed no light on their Bane Act claim. Indeed, the only reference in their opening brief to claims other than discrimination claims is contained in a single paragraph. Plaintiffs refer to their causes of action for "inverse condemnation as well as various other claims," arguing that "[t]he constitutional violations based on [the Bane Act] as well as 42 U.S.C. § 1983 are pled with factual sufficiency showing improper taking." They are not and they do not.

### ii. Section 1983

Section 1983 provides redress for the deprivation, under color of law, of any rights, privileges or immunities secured by the Constitution and laws. The complaint alleges the enforcement of the city's marijuana ordinances deprived class members of federal constitutional rights (Fourth, Fifth and 14th Amendments) and "rights . . . secured by the California constitution under color of an invalid law."

Plaintiffs never had a vested property right to operate a medical marijuana dispensary in the city. The city asserted in the trial court and on appeal that the city's zoning code is drafted in a permissive fashion, so that any use not enumerated in the municipal code is presumptively prohibited. (Cf. *Conejo Wellness Center, supra,* 214 Cal.App.4th at p. 1562 [the plaintiff's operation of a collective medical marijuana dispensary "was always unlawful: first, as a use not expressly permitted by the [municipal code], and later, as a use expressly banned by the [municipal code]"; the plaintiff was "therefore not entitled to the constitutional protections afforded property

12

owners or lessees engaged in lawful existing nonconforming uses"]; *City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 433 ["where a particular use of land is not expressly enumerated in a city's municipal code as constituting a *permissible* use, it follows that such use is *impermissible*"].)

Plaintiffs made no effort in the trial court or on appeal to explain why this principle does not or should not apply in this case. Nor do they dispute the city's assertion that it never issued a permit to plaintiffs to operate a medical marijuana dispensary in the city. (Cf. *Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 ["It has long been the rule in this state . . . that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance *upon a permit issued by the government*, he acquires a vested right to complete construction in accordance with the terms of the permit." (Italics added.)].)

In the absence of factual allegations that would establish a vested right, at any time, to operate a marijuana dispensary, plaintiffs cannot state a claim under section 1983 for deprivation of vested property rights.

### iii.    Other state law tort claims

The complaint alleged three state law causes of action against the individual defendants: tortious interference with business relations (against defendants Sund and Shannon); intentional infliction of emotional distress; and civil conspiracy. The complaint does not state facts sufficient to support any of these claims.

To state a claim for intentional interference with contractual relations, a plaintiff must plead " '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' " (*Quelimane Co. v. Stewart Title Guaranty Co*. (1998) 19 Cal.4th 26, 55.)

The complaint alleges that collective class members had "lease and/or rental agreements for real property" and "had developed business relationships with property owners and/or managers related to their leases." Between August 2010 and February 14,

2012, defendants Sund and Shannon "contacted and threatened the landlords and/or property managers . . . to harm and/or terminate the existing business relationships." During the same period, defendant Sund "made private statements that were false to people who had established business relationships with" the collective class members "to harm and/or terminate the business relationships."

The complaint fails to identify any lease agreement, fails to identify the date of any "contact[] and threat[]", fails to describe the nature of the contact or threat, fails to allege any actual breach or disruption of a lease agreement, and fails to describe how or what damage ensued. Accordingly, the trial court's ruling sustaining defendants' demurrer was proper.

Plaintiffs' cause of action for intentional infliction of emotional distress is equally deficient. That cause of action requires, among other things, extreme and outrageous conduct causing the plaintiff to suffer severe or extreme emotional distress. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.) "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' " (*Id.* at pp. 1050-1051.) Liability " ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [Citation.]' " (*Id.* at p. 1051.) " 'Severe emotional distress means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' " (*Ibid.*)

Here, the complaint alleges the individual defendants participated in "warrantless police raids of patient collectives" and seized property pursuant to "invalid [provisions of chapter 5.87]" to the detriment of patients and caregivers in the city.

Once again, the bare allegations of "police raids" are entirely conclusory, with no facts to show who did what to whom and when: that is, no facts showing conduct exceeding the bounds tolerated in a civilized community. (*Hughes v. Pair, supra,* 46 Cal.4th at p. 1051.) The city's enforcement of its marijuana ordinances does not constitute extreme and outrageous behavior. The trial court properly sustained the demurrer to this claim.

14

Plaintiffs' claim for civil conspiracy likewise fails. "[T]here is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results from that act . . . ." (5 Witkin, Summary of Cal. Law (10th ed. 2010) Torts, § 45, p. 111.) Because, as we have seen, the complaint does not sufficiently allege any tort claims, the cause of action for civil conspiracy cannot stand. And finally, because plaintiffs have stated no viable claims for discrimination, constitutional violations or other tort claims, the trial court properly sustained the city's demurrer to their causes of action for declaratory and injunctive relief.

In sum, the trial court did not err in sustaining the city's demurrer to the first amended complaint. Nor did it err when it dismissed the action after plaintiffs failed to file a second amended complaint (and failed to appear at the hearing on defendants' motion to dismiss the complaint, which took place some five months after the deadline for amending the complaint).

## DISPOSITION

The judgment is affirmed. The city shall recover its costs on appeal.


GRIMES, J.


WE CONCUR:

RUBIN, Acting P. J.


FLIER, J.

15

Filed 8/4/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE KIND AND COMPASSIONATE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LONG BEACH et al., <br><br> Defendants and Respondents. | B258806 <br><br> (Los Angeles County <br> Super. Ct. No. BC 483024) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on July 12, 2016, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

RUBIN, Acting P. J.                      FLIER, J.                      GRIMES, J.