Filed 7/7/25  Bonds v. Curtis CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DEANNA BONDS,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>TANISHA CURTIS,<br><br>     Defendant and Respondent. | B333933<br><br>(Los Angeles County Super. Ct. No. 20STCV34171) |

APPEAL from an order of the Superior Court of Los Angeles County, Anne Hwang, Judge.  Affirmed.

Deanna Bonds, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffrey A. Miller, and Daniel R. Velladao; Law Office of Scott C. Stratman and Varduhi Rose Petrosyan for Defendant and Respondent.

* * * * * *

Deanna Bonds (plaintiff) was involved in an auto accident on August 6, 2017, but did not sue the other driver for negligence until September 4, 2020.  In so doing, plaintiff filed her lawsuit after the applicable two-year statute of limitations period had run.  (Code Civ. Proc., § 335.1)[1]  On demurrer, the trial court dismissed her action as untimely.  This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.      Facts[2]

A.      *The accident*

On the evening of August 6, 2017, plaintiff was working as a Lyft driver in Santa Monica, California.  While stopped at a traffic light, she was "rear ended" by another vehicle driven by Tanisha Curtis.  As Curtis's vehicle collided into plaintiff's back bumper, plaintiff's body "hurled forward violently," which caused her head to rebound back and "slam[]" "hard into the headrest of [the] driver['s] seat."

B.      *Plaintiff's awareness of her injuries caused by the accident*

At the scene of the accident, plaintiff told Curtis that she "felt pain" in her "neck and back."  After exchanging insurance information, plaintiff "[i]mmediately" drove herself to a hospital and was treated for "whiplash, and neck and back pain."

In the weeks and months following the August 2017 collision, plaintiff suffered from "frequent headaches varying in

---

1       All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2       Consistent with the applicable standard of review, we draw the facts from the allegations of the operative complaint.

2

severity, nausea, lightheadedness, vision changes, and amenorrhea," as well as "[c]ognitive and [m]emory impairment," "[c]onfusion," "[m]ood [c]hanges" and other ailments. She filed a claim to Curtis's automobile insurance carrier (21st Century Insurance) for bodily injury, and the insurer denied plaintiff's claim in late October 2017 on the ground that "the low-velocity impact would not cause the injuries claimed." On August 3, 2018, plaintiff underwent "emergency brain surgery" to remove a "post traumatic cyst." Following that surgery, plaintiff's "cognitive symptoms" "worsen[ed]" until, in "May or June of 2020," they "started to gradually feel better." At that time, plaintiff learned that she had "untreated Concussion Syndrome" and "a rare condition" in which "trauma" causes the formation of cysts "scattered throughout her body."[3]

## II. Procedural Background

### A. *Pleadings*

#### 1. *Initial complaint*

On September 4, 2020, plaintiff sued Curtis and 21st Century Insurance Company for negligence using a form complaint.

#### 2. *First amended complaint*

On February 15, 2022, plaintiff filed a form first amended complaint that largely mirrored her initial complaint. The trial

---

[3]     Plaintiff alleges that she discovered this condition during a course of treatment for *other* injuries she sustained when she was hit by a vehicle while riding her bicycle in December 2019. The parties did not litigate how this allegation bearing on causation impacts plaintiff's negligence action against Curtis.

court sustained Curtis's demurrer to this complaint due to the action's untimeliness,[4] but granted plaintiff leave to amend.

### 3. *Second amended complaint (the operative complaint)*

On August 26, 2022, plaintiff filed the operative second amended form complaint with the allegations set forth above in the Facts section.

### B. *Demurrer*

Curtis demurred to the operative complaint on the ground of untimeliness. Plaintiff did not file an opposition or appear at the hearing.

On September 11, 2023, the trial court sustained the demurrer without leave to amend. The court ruled that plaintiff's action was untimely because it was filed more than two years after the August 6, 2017 collision, and accordingly beyond the two-year limitations period. (§ 335.1.) Because the trial court had granted plaintiff leave to amend the first amended complaint to allege facts indicating she did not discover her injuries until a later date (which could postpone the commencement of the limitations period), the court went on to rule that plaintiff's allegations that "she did not have specific knowledge of the particular damage caused by the incident" was insufficient to postpone the commencement of the limitations period because plaintiff knew "the incident . . . caused her significant harm" grave enough for plaintiff to "seek[] emergency treatment" on the

---

[4] Curtis also demurred on the ground that she was improperly added as a defendant in the first amended complaint, but the original complaint named Curtis as a defendant. Indeed, the trial court did not address Curtis's improper-defendant argument in its demurrer rulings.

4

date of the collision, and "further" knew "of the escalating and worsening symptoms in the months that followed." Because "plaintiff . . . had notice of 'appreciable and actual harm,' even if uncertain in amount" more than two years prior to September 4, 2020, her complaint was untimely. The court also denied leave to amend.[5]

### C. *Appeal*

Plaintiff appealed.[6]

## DISCUSSION

Plaintiff argues that the trial court erred in sustaining the demurrer to her second amended complaint without leave to amend.

In reviewing a trial court's dismissal of an action on demurrer, "we ask two questions: '(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?' [Citation.] In answering the first question, 'we ask whether the operative complaint "'states facts sufficient to constitute a cause of action.'"' [Citations.] In undertaking that inquiry, 'we accept as true all "'"'material facts properly pleaded'"'"' in the operative complaint [citations] . . . . In answering the second question, we

---

[5] 21st Century Insurance also demurred to plaintiff's second amended complaint. The court also sustained that demurrer for the same reasons. Plaintiff has not appealed from that ruling and her appeal focuses solely on Curtis.

[6] Although plaintiff sought to appeal the (unappealable) minute order sustaining Curtis's demurrer without leave to amend, the trial court subsequently entered an (appealable) order of dismissal. We can and do elect to treat plaintiff's prematurely filed notice of appeal as an appeal from the order of dismissal. (Cal. Rules of Court, rule 8.406(d).)

5

ask ""whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment."""" [Citation.] We review the trial court's ruling regarding the first question de novo [citation], and review its ruling regarding the second for an abuse of discretion [citation]." (*Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1234-1235.)

## I.    Was the Demurrer Properly Sustained?

A demurrer to a claim is properly sustained if, "on the face of the [operative] complaint," it "clearly and affirmatively appear[s]" that the claim is time-barred. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.) Plaintiff's sole claim is for negligence, which has a two-year statute of limitations. (§ 335.1.) As a general rule, this limitations period begins to run "at 'the time when the cause of action is complete with all of its elements.'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*); *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).) Because the elements for a negligence claim are the defendant's breach of a duty of care that causes the plaintiff's injury (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213), the limitations period for a negligence claim generally begins to run on the date "the injury" caused by the defendant's breach of duty occurred. (*Gutierrez v. Tostado* (2023) 97 Cal.App.5th 786, 790; *Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 779.) For this purpose, a plaintiff suffers "injury" once she sustains "actual and appreciable harm" (that is, if she suffers more than "nominal damages"). (*Davies v. Krasna* (1975) 14 Cal.3d 502, 514.) Because the "*extent* of [injury] is not an element" (*Evans v. Eckelman* (1990) 216 Cal.App.3d 1609, 1620, italics added; *Davies*, at p. 514), the limitations period starts to run once there is "actual and appreciable harm"—even if

6

the plaintiff later suffers further "actual and appreciable harm" not "separate and distinct" from the earlier harm (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 802; *Bennett v. Shahhal* (1999) 75 Cal.App.4th 384, 391-392; *Sonbergh v. MacQuarrie* (1952) 112 Cal.App.2d 771, 774); this corollary implements "[t]he long-standing rule in California that a single tort can be the foundation for but one claim for damages." (*Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622 (*Miller*).)

This general rule is subject to various exceptions, including the so-called "discovery rule." The discovery rule "'postpones [the] accrual of a cause of action'"—and hence the commencement of the limitations period—"'until the plaintiff discovers, or has reason to discover, the cause of action.'" (*Aryeh*, *supra*, 55 Cal.4th at p. 1192, quoting *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" (*Fox*, *supra*, 35 Cal.4th at p. 807.) For purposes of the discovery rule, the term "elements" "refer[s] to the 'generic' elements of wrongdoing, causation, and harm." (*Ibid.*) Thus, the application of the discovery rule turns on "whether the plaintiff[] ha[s] reason to at least suspect that a type of wrongdoing has injured them." (*Ibid.*)

The trial court properly sustained the demurrer in this case because the untimeliness of plaintiff's negligence claim clearly and affirmatively appears on the face of the operative complaint. That complaint alleges that Curtis breached a duty of care when she rear-ended plaintiff, and that this breach caused actual and appreciable harm to plaintiff because the impact of her head against the headrest prompted an emergency room visit on the

7

day of the accident in August 2017, and many more months of headaches, pain, and cognitive impairments into the fall of 2017. Plaintiff's allegation about her claim to Curtis's insurance carrier, and the attached exhibit containing the insurer's October 2017 denial letter, reveal that plaintiff had already "discovered" her negligence cause of action by that time. Thus, the statute of limitations commenced no later than the late summer or early fall of 2017. That plaintiff had to have a cyst removed in August 2018 does not delay the accrual of the limitations period because she had already suffered actual and appreciable harm to her head due to the accident long before that time. What is more, plaintiff necessarily *knew* she was injured in the fall of 2017 (because she was experiencing the headaches, pain and cognitive issues), and thus had reason to at least suspect those injuries were caused by Curtis's negligence because they all stemmed from injury to the part of her body that was injured in the collision. Plaintiff's allegation about her claim to Curtis's insurer confirms this.

Plaintiff resists this conclusion with three arguments.

First, she argues that the statute of limitations should not be deemed to run until when she obtained a diagnosis, in May or June 2020, that she suffered from a "rare" condition which explained the link between the accident and her emergency brain surgery to remove a cyst. We reject this argument. Even before this diagnosis, plaintiff had reason to suspect a link between the accident and the headaches and other cognitive difficulties she was experiencing; confirmation of that link was not required. Plaintiff urges that a prior physician's failure to properly diagnose her entitles her to rely on the discovery rule, but that alleged misdiagnosis "did not prevent [plaintiff] from being aware

8

that [Curtis's] negligence caused her harm"—and thus did not excuse her failure to bring suit sooner. (*Miller*, *supra*, 1 Cal.App.4th at pp. 1624-1625; cf. *Warrington v. Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 567 [discovery rule may apply if "unawareness of the injury is induced by fraud"].) Because plaintiff's head injuries were noticeable and apparent (*Filosa v. Alagappan* (2020) 59 Cal.App.5th 772, 779; *Hills v. Aronsohn* (1984) 152 Cal.App.3d 753, 762), the discovery rule did not postpone the commencement of the limitations period—even if she "'fail[ed] to discover some or most of the resulting damage until later.'" (*Priola v. Paulino* (1977) 72 Cal.App.3d 380, 389; *Warrington*, at p. 567.)

Second, plaintiff argues that the limitations period was tolled by an emergency rule—specifically, Emergency Rule 9. That rule, adopted and then amended by the Judicial Council in response to the COVID-19 pandemic, "tolled" "from April 6, 2020, until October 1, 2020," the statute of limitations for "civil causes of action that exceed 180 days." (Cal. Rules of Court, appen. I, Emergency rule 9(a).) This rule does not aid plaintiff because her claim was time-barred by the late summer or early fall of 2019— long before the emergency rule's tolling period would help her.

Third and lastly, plaintiff argues that equitable tolling applies to extend the statute of limitations in this case because she diligently sought medical care. We disagree. Equitable tolling is generally available only where a plaintiff reasonably and in good faith chooses to pursue one among several legal remedies aimed at lessening her injuries. (See *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657.) Here, plaintiff has a single legal remedy (namely, a lawsuit for negligence); her pursuit of medical treatment prior to filing

9

that lawsuit does not equitably toll the limitations period.  Nor does plaintiff's operative complaint specifically plead facts to support equitable tolling.  (*Long v. Forty Niners Football Co., LLC* (2019) 33 Cal.App.5th 550, 555 ["Where a claim is time-barred on its face, the plaintiff must specifically plead facts that would support equitable tolling"].)

## II.    Did the Trial Court Abuse Its Discretion in Denying Leave to Amend?

A trial court abuses its discretion in denying leave to amend only if there is a "reasonable possibility [that] an amendment . . . would cure the complaint's legal defect[s]." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.)  Here, plaintiff does not make any assertion that she could amend her second amended complaint to "cure" the "defect" that renders her negligence claim time-barred, nor do we believe there is any reasonable possibility of amendment where the face of the complaint shows the action is time-barred.  (See *Save Lafayette Trees v. City of Lafayette* (2019) 32 Cal.App.5th 148, 154 ["Leave to amend should not be granted if the pleadings disclose the action is barred by a statute of limitations"].)

DISPOSITION

The order of dismissal is affirmed.  Curtis is entitled to her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

10

_____, P.J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
WILLIAMS*

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.